INTERNATIONAL UNION OF MINE, MILL & SMELTER WORKERS, LOCALS NOS. 15, 17, 107, 108 and 111, (C. I. O.) ET AL. *v.* EAGLE-PICHER MINING & SMELTING CO. ET AL.

No. 337. Argued January 31, 1945.—Decided May 28, 1945.

*Mr. Louis N. Wolf,* with whom *Mr. Sylvan Bruner* was on the brief, for petitioners.

*Mr. Alvin J. Rockwell,* with whom *Solicitor General Fahy, Mr. A. Norman Somers* and *Miss Ruth Weyand* were on the brief, for the National Labor Relations Board; and *Mr. John G. Madden,* with whom *Messrs. A. C. Wallace, H. W. Blair, James E. Burke* and *Ralph M. Russell* were on the brief, for the Eagle-Picher Mining & Smelting Co. et al., respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The question presented is whether the National Labor Relations Board after seeking and obtaining a court order of enforcement of its own order, in the absence of fraud or mistake induced by the respondent, and after expiration of the term, is entitled to have the provisions of the decree prescribing the nature of the remedy set aside and the case remanded to it, for the prescription of relief it deems more appropriate to enforce the policy of the National Labor Relations Act.[1]

In a proceeding instituted by the petitioner unions the Board found that the respondent companies had been guilty of unfair labor practices in violation of Sections 8 (1) and 8 (3) of the Act.[2] The hearings were protracted both as to the alleged discrimination and as to the remedy which should be adopted. With all relevant data open to it, the Board ordered the employers to cease and desist from certain practices and to reinstate 209 employees with back pay. Based on the Board's understanding as to the opportunity for reinstatement of the 209 men in question and all others eligible for reemployment, it devised a for-

[1] 49 Stat. 449; 29 U. S. C. 151 ff.

[2] 29 U. S. C. 158 (1), (3).

mula for the calculation of back pay for the members of the class to whom the award was made.[3]

The employers were dissatisfied with the order and sought a review by the Circuit Court of Appeals. Thereupon the Board filed a transcript of the record in the same court and sought enforcement of its order. The Unions, who are petitioners in this court, were permitted to intervene and were heard in support of the Board's order. The court modified the order as to matters not here relevant and decreed enforcement.[4] Two paragraphs of the decree thus obtained by the Board with the assistance of the present petitioners specified the method of computing back pay to the claimants whom the Board had found entitled. This decree was entered June 27, 1941. The companies proceeded to compute back pay due the claimants in accordance with the terms of the decree and tendered the amount they ascertained to be due thereunder. The Board, by its agents, examined the corporate records and reached the conclusion that a different method of compensation to the claimants should have been adopted in the original proceeding.

February 4, 1943, nearly two years after the final decree, and after attempted compliance by the employers, the Board petitioned the Circuit Court of Appeals to vacate that portion of its decree which dealt with the award of back pay and to remand the cause to the Board. The petitioner labor unions were permitted to intervene and to support the Board's petition.

It is somewhat difficult to characterize the allegations of the petition. It does not accuse the companies of fraud, but indicates that certain evidence produced by them created a wrong impression on the mind of the Board which could have been corrected had they gone into greater detail and disclosed certain facts within their knowledge, and it

[3] 16 N. L. R. B. 727; 18 N. L. R. B. 320.

[4] 119 F. 2d 903.

avers that the Board prescribed its remedy in reliance upon a mistaken understanding of conditions touching possible reemployment of the claimants. To this petition the employers replied challenging the jurisdiction of the court to vacate its decree, moved to dismiss the petition, and answered on the merits, categorically denying the averments of the petition. Thereupon the Board moved for judgment on its motion. The matter was heard. The court held that there had been no showing that the order and decree were obtained by misrepresentation or wrongful conduct of the employers or that any mistake of the Board had resulted in a decree which was unfair, and consequently held that there was no justification for revocation or remand of the portion of the decree involved. The petition of the Board was accordingly dismissed.[5] The Board did not apply for certiorari but the intervening unions whose petition had also been dismissed applied for the writ. The Board was made a respondent in this court but appeared in support of the petition.

The employers made a persuasive showing that, as respects material elements of the problem of back pay, the record of the Board's hearing, and the decision of the Circuit Court of Appeals enforcing the Board's order, demonstrate that all the facts now relied upon by the Board for revocation and reformation of its order sufficiently appeared prior to the entry of the order. In the view we take, it is unnecessary to consider this matter.

They also attack the standing of the petitioners to seek review by this court when the Board, the body charged with the enforcement of the National Labor Relations Act, has elected not to seek review. We think that, in the circumstances disclosed, the petitioners, though they could not have instituted enforcement proceedings,[6] had stand-

---

[5] 141 F. 2d 843.

[6] *Amalgamated Utility Workers* v. *Consolidated Edison Co.*, 309 U. S. 261; *National Licorice Co.* v. *Labor Board*, 309 U. S. 350, 362–363; *Phelps Dodge Corp.* v. *Labor Board*, 313 U. S. 177, 193.

ing to seek review of the order denying the Board's petition.[7]

The important question presented is whether, despite a decree entered at the Board's behest, prescribing the method of enforcement of the relief granted by the Board, that body retains a continuing jurisdiction to be exercised whenever, in its judgment, such exercise is desirable and may, therefore, oust the jurisdiction of the court and recall the proceeding for further hearing and action.

It will be noted that this is not a bill of review based upon fraud or mistake. If it were to be treated as such obviously the relief prayed could not be granted without a trial, in view of the issues made by the employers' answer. The Board's insistence is that, upon its petition, the averments of which are denied, it is entitled to an opening of the decree and the remand of the cause upon its mere statement that it now thinks the relief orginally granted was inappropriate to the situation as the Board now conceives it.

We are not dealing here with an administrative proceeding. That proceeding has ended and has been merged in a decree of a court pursuant to the directions of the National Labor Relations Act. The statute provides that if, in the enforcement proceeding, it appears that any further facts should be developed the court may remand the cause to the Board for the taking of further evidence and for further consideration. (§ 10 (e).[8]) But it is plain that the scheme of the Act contemplates that when the record has been made and is finally submitted for action by the Board the judgment "shall be final." It is to have all the qualities of any other decree entered in a litigated cause upon full hearing, and is subject to review by this court on certiorari as in other cases. (§ 10 (e) *supra*.) The

---

[7] *Consolidated Edison Co.* v. *Labor Board,* 305 U. S. 197, 218; *Williams* v. *Morgan,* 111 U. S. 684.

[8] 29 U. S. C. 160 (e).

position of the petitioners is, and necessarily must be, that, while the court's decree is final as respects the matter of the alleged unfair labor practices found by the Board, it is never final as respects the relief prescribed by the Board. It must follow that at any time, however remote, and for any reason satisfactory to the Board, it may recall the proceeding from the Circuit Court of Appeals insofar as concerns the relief granted and start afresh as if an enforcement decree had never been entered.

Finality to litigation is an end to be desired as well in proceedings to which an administrative body is a party as in exclusively private litigation. The party adverse to the administrative body is entitled to rely on the conclusiveness of a decree entered by a court to the same extent that other litigants may rely on judgments for or against them. The petitioners' contention is that the nature and extent of the back pay remedy are primarily and peculiarly matters lying within the administrative discretion of the Board (see *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 194; *Labor Board* v. *Link-Belt Co.,* 311 U. S. 584, 600), and that a court's function is limited to imparting legal sanction to the back pay remedy once it has determined that the Board has acted within the confines of its authority, since a court is prohibited from exercising the discretion reposing exclusively in the Board; and it can, therefore, neither affirm nor reverse a Board order relating to back pay on the basis of its own conception of effectuating the policies of the Act.

All this is true, and we have allowed the Board great latitude in devising remedies which it deems necessary to effectuate the purposes of the Act. But it is not we who essay to interfere with the discretion of an administrative body; it is the Board which is seeking to vacate a court order. The Board had exercised its discretion and devised a remedy. It gave long consideration to the problem of adequate relief for the employees discriminated against, and now asserts that it made a mistake. That is all that

it asserts—not even the Board claims that the court below is usurping its functions. What the Board complains of is that it is not permitted to exercise its admittedly wide discretion a second time, or any number of times it may choose.

Administrative flexibility and judicial certainty are not contradictory; there must be an end to disputes which arise between administrative bodies and those over whom they have jurisdiction. This does not mean that the Board could not frame an order which by its terms required modification should conditions change. But here the order was definite and complete; it contemplated only arithmetical computation. The conditions remained the same; what had changed was the Board's awareness of them. Discussion of the Board's peculiar administrative ability serves no end where the matter is one of simple mistake. It rings hollow when it refers to what on the whole is little more than a mistake in arithmetic, and, in one instance, is just that.

Not only has this Court allowed large scope to the discretion of administrators, but the National Labor Relations Act specifically gives the Board wide powers of modification. Until the transcript of a case is filed in court, the Board may, after reasonable notice, modify any finding or order in whole or in part.[9] After the case has come under the jurisdiction of the court, either party may apply to the court for remand to the Board.[10] There is no dearth of discretion or opportunity for its exercise, but opportunities should not be unlimited. If the petitioners are right, it must follow that in any case in which the court refuses to remand, the Board need merely wait until the "final" decree is entered and then proceed to resume jurisdiction, ignore the court's decree, and come again to it, asking its imprimatur on a new order.

[9] 29 U. S. C. 160 (d).
[10] 29 U. S. C. 160 (e).

Petitioners place great reliance on *American Chain & Cable Co.* v. *Federal Trade Commission,* 142 F. 2d 909, but far from supporting them, that case emphasizes the lack of statutory authority here for what was permitted there. There, the court ordered the Federal Trade Commission to consider a petition that the Commission ask the court to vacate its enforcing decree because of war conditions. But the statute in that case reads: "After the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time, the Commission may at any time, after notice and opportunity for hearing, reopen and alter, modify, or set aside, in whole or in part, any report or order made or issued by it under this section, whenever in the opinion of the Commission conditions of fact or of law have so changed as to require such action or if the public interest shall so require." [11] This statute specifically allows the Commission to modify its order after it has become final. And the court merely held that it was reasonable to suppose that Congress intended the Commission's power to extend to cases where its order had become final by court decree as well as to cases where the order had become final by failure to appeal. The National Labor Relations Board is vested with no such power. Section 10 (d) [12] of the Act provides: "Until a transcript of the record in a case shall have been filed in a court, as hereinafter provided, the Board may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it."

There is no question that the Act intended to vest exclusive jurisdiction in the courts once the Board in the exercise of its discretion had reached its determination and applied for enforcement. This prevents conflict of authority. *Ford Motor Co.* v. *Labor Board,* 305 U. S. 364.

---

[11] 15 U. S. C. 45 (b).

[12] 29 U. S. C. 160 (d).

In the *Ford* case, we said, "The authority conferred upon the Board by § 10 (d) of the National Labor Relations Act, to modify or set aside its findings and order, ended with the filing in court of the transcript of record." 305 U. S. 364, 368. But the petitioners and the Board contend that although the court has entered its decree, the Board may resume jurisdiction in the same case when it pleases, disregarding the court's decree. This would, indeed, be a peculiar scheme of jurisdiction, devised to prevent interference with the court while it is deliberating to determine what its decree shall be, but allowing the decree to be ignored after it is entered.

The circumstances of the case show how unfair it would be to hold with the petitioners. The employers challenged the Board's order in the original enforcement proceeding, not only as it affected the charged unfair labor practices, but as touching the appropriate relief. When the Circuit Court of Appeals modified and affirmed the order, the companies had an opportunity to apply to this court for review, or to comply with the decree as modified by the court. They elected to follow the latter course only to be confronted, years later, with an attempt to rewrite a portion of that decree at a time when their right of review of other portions of it had expired.

We are dealing here with a decree of a court entered in a judicial proceeding. The term at which the decree was entered has long since expired. The only recourse open to the Board is the same that would be open to any other litigant, namely, a bill of review. If the petition disclosed any basis for such a review the answer of the employers sharply raised issues of fact which required resolution before any relief in the nature of a review could be granted. Unless the National Labor Relations Act so requires, the Board was not entitled, as of right, to have the decree it had procured set aside in part and the cause remanded for trial *de novo* in part. There is nothing in the Act to indi-

cate that such a decree is dual in character; part of it final and part of it subject to vacation and reexamination by the Board regardless of the showing made to the court and regardless of the view the court holds as to the propriety of such vacation.

The judgment is

*Affirmed.*

Mr. Justice Murphy, dissenting.

This case raises important questions concerning the relationship of courts and administrative agencies subsequent to the entry of a judicial decree enforcing an administrative order. Because the particular facts of this case are so essential to a proper determination of these questions and because the Court has not seen fit to refer to the factual situation in other than general terms, it is necessary to review the facts at some length before discussing my reasons for disagreement with the Court's conclusion.

The National Labor Relations Board, after conducting proceedings instituted upon charges filed by the petitioner unions, found that the respondent companies had committed unfair labor practices in violation of Sections 8 (1) and 8 (3) of the National Labor Relations Act, 49 Stat. 449, 452. On October 27, 1939, the Board entered an order requiring the companies to cease and desist from their unfair labor practices and to take certain affirmative action, including the reinstatement of 209 employees with back pay. Inasmuch as the record at that time convinced the Board that employment opportunities with the companies had been permanently and substantially curtailed subsequent to the critical date of July 5, 1935, the Board felt the normal remedy of full back pay would be inappropriate. Under the assumed circumstances, the normal remedy would require the companies to pay in back wages an amount greater than that which they would have paid to the victims of discrimination had

there been no unfair labor practices. And it would also give the group of 209 employees more than it presumably would have received under curtailed employment opportunities. The Board therefore devised and set forth in its opinion a special formula giving each claimant only a portion of the full back pay to which he otherwise would have been entitled.[1]   16 N. L. R. B. 727; amended in 18 N. L. R. B. 320.

The companies then filed a petition for review in the court below on November 6, 1939, and the Board countered with a cross-petition for enforcement of its order. On February 10, 1940, the petitioner unions sought and obtained permission from the court to intervene in the proceedings on the claim that since certain of their members had been allowed affirmative relief by the Board they were "vitally concerned with the enforcement of said order of the Board." Leave was also given them to file briefs and participate in the oral argument. Subsequently, on May 21, 1941, the court below rendered an opinion affirming the Board's order with certain modifications not here material and a decree enforcing the order was entered accordingly. 119 F. 2d 903.

On August 23, 1941, the companies offered reinstatement to the 209 employees, thereby fixing that day as the terminal date of the period commencing July 5, 1935, for which back pay was due under the terms of the court's decree enforcing the Board's order. The companies submitted their back pay computations to the Board in May, 1942, and tendered the sum of $8,409.39 in purported full payment of all back pay, although they later averred that no more than $5,400 was due under the formula specified by the Board. In accordance with its usual procedure the Board thereupon examined the pertinent pay rolls and records of the companies to verify their computations

---

[1] This special formula was noted by this Court in *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 198–199, note 7.

and to determine whether there had been compliance with the decree. This investigation was completed in October, 1942, at which time the Board became convinced that the provisions of its order as enforced by the court contained certain errors and mistakes relating to back pay and that in framing the special formula it had misconceived the facts as to the availability of employment with the companies for the 209 employees. It appeared to the Board that the companies during the period from July 5, 1935, to August 23, 1941, had been in a position to accord full employment to these 209 claimants as well as to all other former employees reapplying for work and that the normal back-wage computations should have been used.

The Board on February 1, 1943, filed a petition with the court below setting forth the situation. It requested that the pertinent paragraphs of the court's decree enforcing the Board's order be vacated and that so much of the cause as was thereby affected be remanded to the Board for further consideration. The companies filed an answer. The unions also filed a brief and participated in the oral argument on this matter. The court, treating the Board's petition as one "in the nature of a bill of review to set aside, for fraud, mistake and newly discovered evidence, paragraphs 2 (d) and 3 (b) of the final decree of this Court," dismissed the petition on its merits. 141 F. 2d 843. The court later denied without opinion the Board's petition for rehearing and the union's separate motion to modify the decree or to vacate the paragraphs in question and remand to the Board.

I

Turning to the facts relative to the alleged error, we find that the Board in framing its back pay formula for the 209 employees expressly desired to make them whole and "to restore the situation, as nearly as possible, to that which would have obtained but for the illegal dis-

crimination." 16 N. L. R. B. at 834. Normally the Board would have directed payment of full back pay to each claimant from the date of discrimination to the date of offer of reinstatement or placement on a preferential rehiring list, allowing due credit for net interim earnings received from other employment. But the Board felt that "the peculiar factual situation here presents unusual difficulties in fashioning our remedy so as to restore the status quo," 16 N. L. R. B. at 834, and that a special remedy should be devised.

It appears that a strike, beginning on May 8, 1935, caused the companies to close down for several weeks. On that day approximately 1,100 men were employed by the companies. Operations were resumed on June 12 and the Board found that thereafter the companies discriminatorily refused to rehire the 209 employees in question, referred to as the claimants. Evidence was introduced by the companies, however, to show that after July 5, 1935, the effective date of the Act, certain of their mines were sold, many operations suspended, production methods reorganized and specific jobs abolished—resulting in a drastic curtailment of the number of available jobs. According to the Board, only about 600 men were employed by July 5. Some 350 of the 500 employees not then working were claimants in the case, although discrimination was found only as to 209 of them. After July 5 a substantial number of additional men were put to work, but the total number of employees was still considerably short of the pre-strike level of 1,100. The Board apparently assumed that all 1,100 men would reapply for work after the settlement of the strike, thus making the number of available jobs insufficient. As it later became evident, however, not all of the 1,100 reapplied and there were, according to the Board, sufficient opportunities at substantially all times for all who actually reapplied, including the 209 victims of discrimination.

On the assumption that "there were presumably at all times less jobs open than old employees available," 16 N. L. R. B. at 834, and that there was no way of knowing which men would have been reinstated had the companies acted legally, the Board devised a special formula for computing back pay. It directed that there be computed as a lump sum the total amount of wages actually paid to all persons hired or reinstated from and after July 5, 1935, up to the date of compliance with the Board order reinstating or placing the 209 employees on a preferential list. The Board indicated that "we shall not credit the entire lump sum to the claimants discriminated against, since we cannot assume that they and only they would have been given these jobs had the respondents acted lawfully. But we can and do assume for this purpose that a proportionate amount of such claimants would have been given the jobs." 16 N. L. R. B. at 835, 836. Accordingly, the Board directed that a proportion of the lump sum should be distributed to the 209 claimants. This proportion was to be determined by a governing fraction having as its numerator the number of claimants and as its denominator the total number of claimants and all other pre-strike employees who reapplied for work, whether successfully or not, after July 5, 1935. Thus, by way of illustration, if the lump sum amounted to $360,000 and there were 200 claimants and 100 other reapplicants, the governing fraction would be two-thirds and the basic sum of $240,000 would be divided among the 200 claimants, with adjustments being made for net earnings elsewhere. Neither the Board's order nor the court's enforcing decree fixed the amount of back pay due under this formula. The determination of that sum was left to be made after the period of discrimination ended.

Following the close of the period of discrimination, the Board examined the payrolls and other records of the companies to determine the exact amount of back wages

due the 209 claimants. According to the Board, this investigation revealed that, despite any curtailment of employment, the companies at virtually all times after July 5, 1935, had jobs opening up in numbers equal to and at times in excess of the total number of claimants and reapplicants and that such positions were available at virtually all times to all the claimants and reapplicants. This information was submitted by the Board in support of its petition to vacate and remand the portions of the court's decree relating to back pay. It claimed that it had been led into error in framing its original formula by the evidence and contention of the companies relative to curtailed employment and that such a formula, under the facts as they now appeared to the Board, would be grossly inequitable to those who had suffered deprivation of earnings as a consequence of the companies' unfair labor practices.

The parties differ as to whether the Board at the time it framed the special formula was aware of or had access to the facts which it now relies upon. The Board alleges that it was ignorant of these facts and thus misconceived the remedy. The companies state, however, that the Board actually knew of these facts and that, in the exercise of its discretion, it decreed that partial rather than full back wages should be paid. We need not pause to determine this controversy for it appears obvious that, assuming the figures submitted by the Board are true, the special formula specified by the Board is grossly inadequate and falls far short of achieving the expressed desire of the Board in this case "to restore the situation, as nearly as possible, to that which would have obtained but for the illegal discrimination."

If it were true that there were insufficient jobs for the 209 claimants as well as for the other reapplicants the special formula would be appropriate. Then it could be said that it was impossible to tell whether the 209 claimants would all have been employed by the companies sub-

sequent to July 5, 1935, and that it was therefore necessary to apportion the available jobs among claimants and other reapplicants for purposes of determining how much back pay was due the claimants. But if it is a fact that there were sufficient employment opportunities for all the 209 claimants and the reapplicants at virtually all times, the back pay formula framed by the Board becomes inadequate. Since all of the claimants would then presumably have been employed by the companies at all times but for the discrimination, all of them suffered the loss of the full wages which they would have received and any formula which gives them less than that amount fails to make them whole. And the companies escape paying the full amount of wages they would have paid had they acted legally.

We cannot ascribe to the Board a deliberate intention to prescribe something less than a full make whole remedy. Nothing appears in the Board's opinion or order to that effect. Indeed, the Board's statements of its objectives in this case expressly negative such an intention. And the reason given for fashioning the special formula—the fact that there were presumably at all times less jobs open than old employees available—is consistent only with a desire to compensate the claimants as fully and as equitably as possible under the facts as then contemplated.

In addition to the alleged inappropriateness of the formula as a whole, the Board claims that there are numerous other errors in the back pay provisions that warrant remand for purposes of correction. Thus footnote 185 of the Board's opinion inadvertently contains a serious omission which, contrary to the Board's intention, limits the lump sum used in the formula to the earnings of only 209 employees rather than to the earnings of 209 employees plus the number of old employees reapplying.[2]

---

[2] This footnote appears at 16 N. L. R. B. at 835. With the words in brackets originally being omitted by the Board and being added here

The governing fraction includes the latter employees and the lump sum should in turn reflect their earnings. Otherwise the claimants are limited to a small part of their proportionate loss in wages. Moreover, the formula illogically requires that there be deducted from each claimant's share the full amount rather than a pro rata share of his interim earnings. These errors and certain ambiguities [3] serve to make the partial back pay formula an ineffective means for making the employees as whole as possible even on the assumption that employment opportunities had been curtailed. The remedy which the Board originally found to be essential to carry out the purposes of the Act is thereby rendered inadequate.

The practical impact of this situation on the employees involved is serious and substantial. Under the Board's partial and mathematically inaccurate back pay formula, which this Court now insists must be followed, the companies claim that the 209 employees are entitled to only $5,400. But if the true facts are as represented by the Board and if it should be determined that the full back pay formula should be utilized under such circumstances, approximately $800,000 would be due these 209 employees

to indicate the Board's intended modification, this footnote reads as follows:

"If at any given time during this period the number of such new or reinstated employees then working exceeds the number of claimants discriminated against [plus the number of old employees reapplying], only the earnings of a number of such employees equal to the number of claimants discriminated against [plus the number of old employees reapplying] shall be counted in computing the lump sum. . . ."

[3] The Board claims that since the number of claimants and reapplicants varies from week to week, the formula is ambiguous as to whether a single governing fraction, based on the average or on the maximum numbers of claimants and reapplicants, or successive governing fractions, based on the actual numbers, are to be constructed for the period of discrimination. It is also said that the formula fails to define the "average earnings" referred to in the last sentence of footnote 185 of the Board's opinion.

after allowance for interim earnings elsewhere. Thus these employees must bear the loss of nearly $795,000 in unpaid back wages resulting from the unfair labor practices of the companies. On them rests the penalty for what this Court euphemistically calls "little more than a mistake in arithmetic."

It is thus clear that unless the Board is given some opportunity to reexamine its back pay remedy much of the loss resulting from the companies' unfair labor practices may be shifted from the companies to the employees and the public policy of the Act may be largely circumvented. Our concern here is not with the truth of the facts alleged by the Board or with the appropriateness of any other remedy the Board might devise. It is enough that the Board has cast sufficient doubt on the appropriateness and correctness of its original remedy to warrant resubmission of the matter to the Board for further consideration. The Court today does not attempt to deny that the situation is an intolerable one in light of the alleged facts or that modification or remand of the back pay provisions of the decree is a reasonable request under such circumstances. Hence, unless some principle of law or statute compels the opposite conclusion, such a remand should have been made.

## II

The pertinent legal and statutory rules, in my opinion, do not preclude remand of the back pay provisions of the court's decree to the Board under these circumstances.

The companies argue that the exercise of the Board's discretion in devising a back pay formula became a finality by virtue of the enforcing decree of the court below and that this formula cannot be modified or reconsidered at this late date. It is claimed that all rights and liabilities under the decree were fixed and fully accrued on August 23, 1941, the terminal date of the period of discrimination,

and that the court below had no jurisdiction to vacate or remand any portion of that decree subsequent to the end of the term in which it was entered.

But it is plain that the back pay formula, as enforced by the court's decree, was at most provisional and tentative in character. Cf. *United States* v. *Swift & Co.*, 286 U. S. 106, 114. It did not pretend to be based upon detailed and comprehensive findings as to actual employment opportunities and actual losses suffered during the entire period of discrimination, facts which were impossible to determine until after the close of that period. Even though the hearing closed on April 29, 1938, that part of the order relating to back pay spoke as of July 5, 1935. The Board merely assumed from certain evidence and allegations that there would be decreased employment opportunities at all times after July 5, 1935, and left to the future the problem of uncovering the complete facts. The formula was drawn in light of that assumption, an assumption that necessarily contemplated that undisclosed or new facts or a removal of a misconception of the true facts might call for an adjustment in the remedy to be applied. And the enforcing decree of the court in no way affected the tentative and unexecuted nature of this formula.

The rights and liabilities under such a back pay formula could not become final until the Board or the courts were satisfied with the application of the formula to the actual facts or until the formula ripened into an executed decree. The sole purpose of the remedy was to vindicate the public policy by compensating the employees for the losses they had suffered due to the unfair labor practices of the companies rather than to punish the companies. Until it was authoritatively determined that the remedy did accomplish this purpose as applied to the actual facts, or until the decree was fully executed, no rights and liabilities can be said finally to have accrued.

Thus the companies had no vested right on the day they ceased their discriminatory policy relative to the 209 employees to compensate those employees according to a formula which woefully failed to make the employees whole. The relevant portions of the decree could still be modified or remanded.

As the court below recognized, it retained "jurisdiction over the enforcement of all of the provisions of its decree which remain unexecuted." 141 F. 2d at 845. A court has the unquestioned and continuing power to make corrections and changes in its unexecuted decrees even after the term of court in which they were originally entered has expired. See *Root* v. *Woolworth,* 150 U. S. 401; *Shields* v. *Thomas,* 18 How. 253; 8 Cyclopedia of Federal Procedure (2d ed.) § 3598 and cases there cited. This includes the power to modify or grant additional relief in the interest of enforcing or effectuating decrees. Thus the doctrine of finality of judgment has no relevance as applied to unexecuted decrees and cannot be utilized to deny power in the court below to modify or remand the back pay provisions of the decree to the Board. No specific provision in the National Labor Relations Act, moreover, is necessary in order to appreciate that any decree requiring future action is upon entry partly final and partly unexecuted. "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." *United States* v. *Swift & Co.,* 286 U. S. 106, 114. As to the unexecuted portion of the decree below, finality obviously has not accrued.

On the facts alleged in the Board's petition and in the unions' motion, the court below plainly erred in refusing to allow the Board to reconsider the back pay remedy. Under § 10 (c) of the Act, the Board is authorized to require such affirmative remedial action, "including reinstatement of employees with or without back pay, as will effectuate the policies of this Act." As the Court

recognizes, the nature and extent of the back pay remedy are thus primarily and peculiarly matters lying within the administrative discretion of the Board, and a court's function is limited to imparting legal sanction to the back pay remedy once it has determined that the Board has acted within the confines of its authority. A court cannot exercise the discretion that Congress has given only to the Board. But if, as conceded, a court can neither affirm nor reverse a Board order relating to back pay on the basis of its own conception of effectuating the policies of the Act, no less should it refuse to allow the Board to reconsider an unexecuted remedy once proposed if the Board reasonably feels that the public policy which it guards demands such action. The special competence of the Board to require affirmative remedial action necessarily includes a special competence to modify, amend or repeal such a requirement prior to its consummation.

It does not follow, as the Court assumes, that the Board at any time and for any reason satisfactory to it may recall that part of the enforcing decree relating to affirmative relief and start afresh. The requirement of reasonableness applies here as elsewhere. If the Board's request is so baseless and unnecessary as to exceed the bounds of reasonableness, refusal to remand lies within the sound discretion of the court. But here it is undeniable that if the facts stated by the Board are true the unexecuted remedy is entirely inadequate to achieve the purposes for which it was designed. Employees suffer for the sins of their employers and the public policy underlying the requirement of back pay is largely frustrated. To deny a remand under such circumstances is to abuse a court's discretion and to transform the judicial system into a weapon against the innocent victims of an administrative error.

The responsibility of the Board for proposing remedies to effectuate the policies of the Act is a continuing one. Cf. *Franks Bros. Co.* v. *Labor Board,* 321 U. S. 702, 705–

706. It is not necessarily lifted by reason of the entry of a judicial decree of enforcement, although it may be suspended temporarily during the pendency of review proceedings in the appellate court. *Ford Motor Co.* v. *Labor Board,* 305 U. S. 364. If at any time before the decree is executed the Board becomes convinced that the remedy as tentatively approved by the court will no longer serve the statutory purposes, reason and justice dictate that the Board should have the opportunity to reconsider the matter. Whether the inadequacy of the remedy be due to inadvertence, negligence, fraud or other reasons, there is no recognizable public or private interest in executing such a remedy. To hold that a particular back pay remedy must be imposed when the Board reasonably suspects that it is incorrect or inadequate is to project legalism to an absurd and dangerous length.

We are not dealing here with an ordinary common law money judgment which one party seeks to set aside for fraud, mistake, or newly discovered evidence. Nor are we met with an ordinary litigant seeking relief for itself from a judicial decree. We are concerned, rather, with the attempt of an administrative agency to effectuate the policies set forth in a Congressional mandate. Until those policies are effectuated through the enforcement and execution of statutory remedies, the agency and the courts should coordinate their efforts to realize the plain will of the people. *United States* v. *Morgan,* 307 U. S. 183, 191.

MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS and MR. JUSTICE RUTLEDGE join in this dissent.