FEDERAL SAVINGS AND LOAN IN-
SURANCE CORPORATION, and Fed-
eral Savings and Loan Insurance Cor-
poration as Receiver of Apollo Savings
& Loan Association, Plaintiffs,

v.

DIRECTOR OF REVENUE OF
ILLINOIS DEPARTMENT OF
REVENUE, Defendant.

No. 86 C 101.

United States District Court,
N.D. Illinois, E.D.

Oct. 22, 1986.

Glen H. Kanwit, Michael F. Duhl, Karen P. Flynn, Hopkins & Sutter, Chicago, Ill., for plaintiffs.

George W. Foster, Michael J. Wynne, Kenneth Cortesi, Neil F. Hartigan, Office of Illinois Atty. Gen., Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Plaintiffs Federal Savings and Loan Insurance Corporation, a corporate instrumentality of the United States of America ("FSLIC as corporation"), and Federal Savings and Loan Insurance Corporation as receiver of Apollo Savings & Loan Association ("FSLIC as receiver") have brought this action against the defendant Director of Revenue for the State of Illinois Department of Revenue. Plaintiffs seek a refund of state corporate income taxes paid to Illinois for the tax years ended October 31, 1975, October 31, 1976, and October 31, 1977. The defendant asserted liability for such taxes under Chapter 120, Illinois Revised Statutes, as amended, against Appollo Savings & Loan Association, an insolvent savings and loan association in FSLIC receivership at the time of the assessed tax liability. Plaintiffs now claim that such taxation violates the supremacy clause of the United States Constitution, certain provisions of the National Housing Act (12 U.S.C. § 1725(e)), and section 102 of the Illinois Income Tax Act. Subject matter jurisdiction in this case is predicated on 28 U.S.C. § 1331. Federal jurisdiction is also founded on 28 U.S.C. § 1345 and 12 U.S.C. § 1730(k)(1) which grant the federal district courts jurisdiction over actions to which the FSLIC as corporation is a party. Before the court currently is defendant's motion to dismiss the complaint and plaintiffs' motion for summary judgment. For the reasons below, the motion to dismiss is granted in full and plaintiffs' motion for summary judgment is denied.

## I. Factual Background

For purposes of the defendant's motion to dismiss, the factual allegations of the complaint must be taken as true. On April 26, 1968, the Illinois Commissioner of Savings and Loan Associations issued an order pursuant to section 7–8 of the Illinois Savings and Loan Act, Ill.Rev.Stat., ch. 17, § 3191 to take custody of Apollo Savings & Loan Association. The order was issued because Apollo was unable to continue its operations and an emergency existed which might have resulted in a loss to members or creditors of Apollo. On this date the Commissioner also appointed a receiver for the purpose of liquidating Apollo. On May 3, 1968, the Circuit Court of Cook County, Illinois, entered an uncontested decree of liquidation finding that "sufficient cause existed on April 26, 1968 and still exists for the custody, liquidation and dissolution" of Apollo.

Apollo was an "insured institution" within the meaning of the National Housing Act, 12 U.S.C. §§ 1724(a), 1726. The appointment of a receiver to liquidate Apollo constituted a "default" as defined by 12 U.S.C. § 1724(d) and FSLIC as corporation was thereby required under 12 U.S.C. § 1728(b) to pay Apollo's insured depositors. In return for the insurance payment, each account holder delivered an assignment to FSLIC as corporation. Pursuant to these assignments and the applicable provisions of the National Housing Act, 12 U.S.C. §§ 1728(b) and 1729(b), (c)(1), the FSLIC as corporation became subrogated to the rights of the insured account holders against the assets of Apollo.

On October 1, 1968, the Illinois Commissioner appointed the FSLIC as receiver of Apollo. FSLIC as receiver commenced liquidation of Apollo which took nearly ten years to complete. On June 29, 1976, FSLIC as receiver filed a motion in Circuit Court requesting authorization to sell the remaining assets of the receivership and make a final distribution. At that time, FSLIC as corporation proposed to purchase in its corporate capacity all the real and personal property of the receivership. In consideration for the transfer of such assets, FSLIC as corporation agreed to pay immediately the full amount of the principal and the post-default and interim interest due the uninsured depositors. (It did not have to agree to pay the claims of the insured creditors because these were already paid when Apollo was first in default.) It also agreed to assume the claims of the other creditors. This liquidation was approved in *Lanigan v. Apollo Savings*, 64 Ill.App.3d 126, 21 Ill.Dec. 43, 380 N.E.2d 1369 (1978).

At the time of the proposed final sale and distribution, December 31, 1976, Apollo's total liabilities were $26,043,613. Its assets totalled only $23,994,829. FSLIC as a corporation alone held a total claim against FSLIC as receiver for $23,685,792, as a result of having paid insurance on the insured deposits and having been subrogated to the claims of the insured. Thus, the FSLIC as corporation held more than 90% of the creditor claims against the FSLIC as receiver. Furthermore, after FSLIC as corporation purchased all Apollo assets, and after it used those funds to retire all the other creditors' claims against FSLIC as receiver as it agreed to do (totaling $26,043,613 minus $23,685,792 = other creditors' claims of $2,357,821), there was still $21,636,958 in purchased assets available to replenish the FSLIC as corporation's insurance fund that had been used to pay the insured depositors' claims ($23,-994,829 minus $2,357,871 = $21,636,958). Of course, this $21,636,958 falls short of the $23,685,792 (representing FSLIC as corporation's claim against FSLIC as receiver) that is needed to fully replenish the insurance fund.

Apollo timely filed its corporate income tax returns (IL–1120's) for its taxable years ending October 31, 1975, October 31, 1976, and October 31, 1977. For each year Apollo submitted a statement explaining that as an insolvent savings and loan association it had no tax liability under Illinois law. For each of these years, the Department defendant disallowed the claim of no tax liability and math error assessments

were made as authorized by section 903(a)(1) of the Illinois Income Tax Act in the amounts of $3,931; $20,691; and $326 for each of the respective tax years.

Apollo paid the applicable tax and timely filed a Form IL–1120X for each year claiming refunds in the amount of tax paid. Apollo's claims for refund were audited by the Illinois Department of Revenue and denied. On May 8, 1978, Apollo timely protested the Department's denial of its claim for refund. On June 28, 1982, the Department held a hearing on this matter. The Department issued a Notice of Decision on October 30, 1985 "determin[ing] that the taxpayer's claims for refund for the tax years ending October 31, 1975, October 31, 1976 and October 31, 1977, be denied in full." Apollo filed a request for rehearing on November 29, 1985 which the Department denied on December 3, 1985. On January 7, 1986, plaintiffs filed the instant action in this court. If plaintiffs prevail in this action and obtain the tax refund, the refunded monies would be used to further replenish FSLIC as corporation's insurance fund. As just explained, because the purchased assets were not sufficient to cover all of the insurance payments paid by the fund, the fund has sustained a shortfall of $23,685,792 minus $21,636,958 = $2,048,834. The total amount sought in this action is $24,948. Thus, if FSLIC as receiver prevails here, this amount would be an asset of Apollo which, under the purchase of assets agreement, would have to be turned over to FSLIC as corporation. If FSLIC as corporation prevails, then this amount would go directly to its insurance fund.

## II.  Legal Discussion

### A.  The Existence of Subject Matter Jurisdiction

Defendant's motion to dismiss concentrates on certain threshold matters suggesting that this court lacks the power to decide this controversy. There are three parts to this argument about lack of subject matter jurisdiction. First, defendant argues that this action is moot because all of plaintiffs' claims, including the federal claims, were presented to and conclusively adjudicated by the Illinois Department of Revenue. Second, defendant contends that the eleventh amendment bars federal jurisdiction over this suit. Third, defendant claims that the FSLIC as corporation lacks standing to sue.

■ The court first addresses the mootness argument. Defendant observes that under Illinois administrative law a denial, after a hearing, of a claim for a tax refund becomes final upon the issuance of a denial of a request for rehearing or notice of final decision. Ill.Rev.Stat., ch. 120, § 9–908(d)(2). Furthermore, if judicial review of the administrative denial is not timely sought, judicial review is thereafter barred. Ill.Rev.Stat. ch. 110, § 3–102. Therefore, defendant concludes, events have occurred which render it impossible for this court to grant relief and the case is accordingly moot.

■ Defendant's argument is without merit. It merely shows that the Illinois state courts are without the power to adjudicate this controversy. The argument says nothing about the power of the federal courts. Furthermore, the state courts are without power *not* because of mootness, but because state law has simply chosen not to empower its courts to adjudicate tax refund cases when more than the statutorily prescribed number of days (i.e., 35, see *id.* § 3–103) has elapsed. A case is "moot" for purposes of federal court jurisdiction only "when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Leonhart v. McCormick*, 395 F.Supp. 1073, 1076 (W.D. Penn.1975). Here, of course, plaintiffs seek a tax refund of almost $25,000. They have not yet gotten it and the defendant is not about to willingly turn it over. A determination on the merits in this case will unquestionably have a practical effect on which party is entitled to the money. This is the essence of a ripe controversy.

■ The second reason defendant gives for why this court has no jurisdiction over

this controversy is based on the eleventh amendment to the Constitution. That amendment forecloses the jurisdiction of the federal courts to suits by citizens against states. Plaintiffs respond to this defense by citing *United States v. Nevada Tax Commission*, 439 F.2d 435 (9th Cir. 1971) for the proposition that the eleventh amendment does not apply to suits brought by the United States against a state. This statement of law is correct. *See, e.g., United States v. Mississippi*, 380 U.S. 128, 140–141, 85 S.Ct. 808, 814–815, 13 L.Ed.2d 717 (1965); *Delaware Valley Citizens' Council v. Commonwealth of Pennsylvania*, 678 F.2d 470 (3d Cir.), *cert. denied*, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982). It also has critical applicability to this case. There are two plaintiffs here, FSLIC as corporation and FSLIC as receiver. The former must be deemed "the United States" for purposes of the eleventh amendment. This is because 12 U.S.C. § 1725(c) states that "the [FSLIC] shall become a body corporate, and shall be an instrumentality of the United States...." As such, the FSLIC as corporation is an "agency" of the United States. See, *Acron Investments, Inc. v. FSLIC*, 363 F.2d 236 (9th Cir.1966), *cert. denied*, 385 U.S. 970, 87 S.Ct. 506, 17 L.Ed.2d 434 (1966). As an "agency" of the United States, the FSLIC as corporation is indistinguishable from the United States itself for jurisdictional purposes. See 28 U.S.C. § 1345 (stating the equivalency of the "United States" with its "agencies" for purposes of original jurisdiction in the federal district courts). Therefore, the FSLIC as corporation is entitled to as much relief from the bar of the eleventh amendment as is the United States. *Cf. Brennan v. State of Iowa*, 494 F.2d 100, 103 (8th Cir.1974) (deeming the Secretary of the Department of Labor the "United States" for purposes of the eleventh amendment), *cert. denied*, 421 U.S. 1015, 95 S.Ct. 2422, 44 L.Ed.2d 683 (1975). As a result, this court has jurisdiction to adjudicate the controversy between the FSLIC as corporation and defendant.

It is unclear at first blush whether the same conclusion applies to FSLIC as receiver. The parties to this lawsuit do not attempt to distinguish between these two plaintiffs on the question of the eleventh amendment. Perhaps this is reasonable because even when the FSLIC operates as a receiver rather than as a corporation, it is still presumably an agency of the United States. As previously stated, 12 U.S.C. § 1725(c) defines the FSLIC as a "corporate instrumentality of the United States." Thus, when the FSLIC assumes the capacity of receiver, it is still an agency of the United States merely appearing in the capacity of receiver. Therefore, the FSLIC as receiver is entitled to relief from the bar of the eleventh amendment so this court has jurisdiction to adjudicate this controversy as to it.

▮ The final issue raised by the defendant which goes to the court's power to adjudicate this case applies only to the FSLIC as corporation. Specifically, defendant argues that the FSLIC is not the "real party in interest" in this case and it therefore lacks standing to sue for the refund of the taxes Apollo paid. It is true that only Apollo (and the FSLIC as receiver) paid the taxes at issue here. Nevertheless, it is wrong for defendant to conclude that this fact alone denies the FSLIC as corporation standing to sue. The case of *United States v. Bureau of Revenue*, 291 F.2d 677 (10th Cir.1961), argued by both parties, explains why.

In *Bureau of Revenue*, the United States and Phillips Petroleum Company brought suit in federal district court against the Bureau of Revenue of the State of New Mexico seeking, in part, a refund for taxes paid by Phillips on the grounds that the tax assessment was unconstitutional. Phillips processed uranium bearing ore and sold uranium concentrate to the Atomic Energy Commission, an agency of the United States. *Id.* at 678. "[B]y terms of the contract between Phillips and the Atomic Energy Commission, the price paid to Phillips included the amount of the tax exacted and provided that Phillips would reimburse the Commission to the extent of any refund obtained." *Id.* The Bureau of Revenue

filed a motion to dismiss for lack of jurisdiction on the grounds that the United States was not the real party in interest, precisely the argument raised here. The Ninth Circuit rejected the argument reasoning that "[t]he United States is the proper party to prosecute an action to protect its sovereign rights. It is the real party in interest. If immunity from the state tax exists, it is in behalf of the United States." *Id.* 678–79.

The same conclusion should apply here. Apollo paid the actual tax here, just as Phillips paid the tax in *Bureau of Revenue.* FSLIC as corporation made an agreement with FSLIC as receiver to purchase all of Apollo's assets. By virtue of that agreement, FSLIC as corporation is entitled to any assets which FSLIC as receiver would otherwise be entitled to. This, of course, would include any tax refund to Apollo. Similarly, in *Bureau of Revenue,* Phillips by contract agreed to turn over to the Atomic Energy Commission the amount of any tax refund it received. In both cases, then the existence of an agreement caused the tax refund to inure to the benefit of agencies of the United States. And just as such facts in *Bureau of Revenue* cloaked the United States with standing, so do the facts here. Since the United States appears here in the form of FSLIC as corporation, that entity has standing.

### B. Res Judicata

Having addressed the arguments that go to the court's power to decide this case, and having rejected the contentions that the court lacks the power, the court now proceeds to address the other affirmative defenses that the defendant raises. The court finds that the defense of res judicata is dispositive of this action and therefore declines to address the other defenses. Furthermore, because the res judicata analysis is somewhat different for each of the two plaintiffs, each one is considered separately.

### 1. *FSLIC as receiver.*

Defendant contends that res judicata bars relitigation of this action, already once adjudicated by the Illinois Department of Revenue, in this court. Under the doctrine of res judicata, a final judgment on the merits in a court of competent jurisdiction bars the same parties or their privies from relitigating not only the same issues which were in fact raised and decided on a claim, but also all others which could have been raised in the prior action. *Mandarino v. Pollard,* 718 F.2d 845, 849 (7th Cir.1983), cert. denied, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984). The essential elements of res judicata are: (1) a final judgment on the merits of an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits. *Id.*

Here, there is no dispute that a final judgment on the merits was reached in the administrative adjudication. There is also no dispute that the causes of action there and here are identical. Finally, the defendant in the administrative action was the Department of Revenue and here it is the Director of that Department. If these are not the same parties, they are certainly privies, and plaintiffs here do not argue otherwise. Although the plaintiffs do not frame the issue well, it appears to the court that there are only two possible reasons for refusing to apply res judicata in this case. First, the plaintiff here, FSLIC as receiver, was not a party or privy to the administrative action. Second, and more fundamentally, the doctrine of res judicata does not apply with the same force to merit adjudications conducted by administrative agencies as it applies to courts. This court rejects both arguments.

The administrative action in which Apollo made its claim for refund was titled "Illinois Department of Revenue v. Apollo Savings & Loan Association." See Ex. to Complaint. Thus, FSLIC as receiver was not named as a party to that action. Nevertheless, FSLIC as receiver is still a privy to Apollo for res judicata purposes. By plaintiffs' own allegations, at the time Apollo protested the denial of its claim for

refund it was already under the receivership of FSLIC as receiver. In that capacity and by virtue of its receivership powers, FSLIC as receiver and not Apollo had the right and duty to participate in and control the prosecution of Apollo's claim for refund. When a non-party to an action has control over the conduct of the litigation, it is in privity with the party it controls and bound by the results of the litigation. See *American Safety Flight Systems, Inc. v. Garrett Corp.*, 528 F.2d 288, 289 (9th Cir. 1975), and cases cited therein; 1 B *Moore's Federal Practice*, ¶ 0.411[6] at pp. 456–58 (2d ed. 1984). *See also id.* at pp. 487–88 (receiver in privity with corporation). Therefore, FSLIC as receiver is as bound by the results of the prior administration as is Apollo.

The more fundamental question is whether res judicata applies to administrative determinations. *University of Tennessee v. Elliott*, —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), a recent Supreme Court case not cited by any party here, squarely addresses this question. In that case, the Court determined that state administrative proceedings do not have a preclusive effect on subsequent federal court Title VII claims because the legislative history of that statute suggests that Congress did not intend there to be a preclusive effect. *Id.* 106 S.Ct. at 3225. However, the Court went on to hold that when a state agency acting in a judicial capacity resolves a dispute before it, the agency's findings must be given a preclusive effect in a subsequent 42 U.S.C. § 1983 suit in federal court. *Id.* at 3225–27. This is because "Congress, in enacting the Reconstruction civil rights statutes, did not intend to create an exception to general rules of preclusion," *id.* at 3225, or "foreclose the adaptation of traditional principles of preclusion to such subsequent developments as the burgeoning use of administrative adjudication in the 20th century" *id.* at 3226.

Thus, in *University of Tennessee,* the Court was persuaded to suspend the "general rules of preclusion" only when the legislative history of the statute upon which the cause of action was based indicated that such was Congress' intent. *Id.* at 3225, 3227 n. 7. For all other cases, the Court reaffirmed the "sound policy [of] apply[ing] principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity." *Id.* (citing to *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). Indeed, although the *Utah Construction* case involved only the issue of collateral estoppel, the Supreme Court stated its willingness to apply the full doctrine of res judicata (as opposed to just collateral estoppel) to administrative agency determinations:

> When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.

*Utah Construction,* 384 U.S. at 421–22, 86 S.Ct. at 1560. This willingness to apply res judicata or claim preclusion to administrative decisions was indicated again in the *University of Tennessee* opinion itself. "Where an administrative forum has the essential procedural characteristics of a court, ... its determinations should be accorded the *same* finality that is accorded the judgment of a court." 106 S.Ct. at 3226 n. 6 (quoting Restatement (Second) of Judgments § 83, p. 269 (1982)) (emphasis added). The Restatement expresses the idea even more explicitly. "An adjudicative determination by an administrative tribunal is conclusive under the rules of *res judicata* [but] only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication...." Restatement (Second) of Judgments § 83(2) (1982) (emphasis added). For other cases in which courts have actually applied claim preclusion to prior administrative decisions, *see International Union of Mine, Mill & Smelter Workers v. Eagle–Picher Mining Co.,* 325 U.S. 335, 65 S.Ct. 1166, 89 L.Ed. 1649 (1945); *ITT Corp. v. United Telephone Company of Florida,* 550 F.2d 287 (5th Cir.1977); *see also* Restatement (Sec-

ond) of Judgments § 83, p. 274 (1982) ("The rules of res judicata referred to [in this section on administrative res judicata] include the rules of claim preclusion ... and the rules of issue preclusion ...").

■ Thus, the state administrative adjudication in this case will be entitled to the full principles of res judicata if that proceeding enjoyed "the essential elements of adjudication." Of course, even if those elements were present, res judicata would not apply if Congress intended for there to be no preclusion under the statutes plaintiff is suing under here (that is, the National Housing Act). But plaintiffs have presented no such legislative history. In the absence of any indication that Congress intended to suspend the presumed adaptation of "the traditional rules of preclusion to administrative decisions," 106 S.Ct. at 3226, in this case, this court is of the view that res judicata should apply in this case if the essential elements of adjudication were indeed present in the state administrative proceeding.

■ According to the Restatement, the essential elements of adjudication include adequate notice; the right of parties to present evidence on their own behalf and rebut evidence presented by the opposition; a formulation of the issues of law and fact; a final decision; and the procedural elements necessary to conclusively determine the issue in question. Restatement (Second) of Judgments § 83(2) (1982). Plaintiffs do not argue that these elements were not present in the administrative adjudication of Apollo's tax refund claim. Indeed, as the section of the Illinois law covering the conduct of Department of Revenue's hearings indicates, no such argument could prevail. Under Ill.Rev.Stat. ch. 120, § 9–910, Apollo had the right to a hearing to protest the denial of its claim for a tax refund. Since Apollo sought such a hearing and was present at it, Apollo certainly had notice of the hearing. At that hearing, Apollo had the right to subpoena the attendance of witnesses and examine the testimony of those witnesses. *Id.* § 9–916(a). It similarly had the right to subpoena the

production of books, papers, records or memoranda. *Id.* As is evident from the ten-page written decision of the hearing officer denying the tax refund claim, Apollo presented all of its evidence and legal arguments at the hearing and these were considered by the hearing officer. The officer formulated the two legal issues presented by the case, found the relevant facts, and discussed those facts in light of the officer's written conclusions of law. This decision became final when the request for rehearing was denied. These proceedings contain "the essential elements of adjudication" and thus render the application of res judicata appropriate.

The only argument plaintiffs offer against the application of res judicata is the idea that administrative res judicata is only meant to foreclose relitigation of the facts, not the law. This argument is based on the language of *Utah Construction* in which the Supreme Court stated that when an agency acting in a judicial capacity "resolves disputed issues of *fact* " res judicata is to be applied. 384 U.S. at 422, 86 S.Ct. at 1560 (emphasis added). Although plaintiffs do not cite it, this language is also quoted and reaffirmed in *University of Tennessee.* Contrary to plaintiffs' contentions, this passage does not hold that an administrative agency's *legal* conclusions are not entitled to res judicata; it is meant to affirm that the agency's findings of fact are so entitled. The Restatement expressly states that when an administrative tribunal has the "essential elements of adjudication" its final judgment "has the *same* effect under the rules of res judicata, subject to the *same* exceptions and qualifications, as a judgment of a court." Restatement (Second) of Judgments § 83 (1982) (emphasis added). In another statement of this concept, the Restatement explains the appropriateness of applying administrative res judicata to legal conclusions:

The essential question is whether, within the context of the larger purpose of an administrative proceeding, an issue is formulated as it would be in a court and decided according to procedures similar

to those of court. An issue of law is so formulated when there is assertion and controversion of the meaning of an existing rule as applied to specific circumstances.... If an issue has thus been formulated, and if the procedure for resolving it is substantially similar to that used in judicial adjudication, the agency's determination of the issue should be given preclusive effect in accordance with the rules of res judicata.

*Id.* at p. 271. Perhaps most pertinent is the following illustration in the Restatement:

T is subject to income tax on earnings from a business, being allowed deductions for expenses reasonably necessary in connection with the business. O, the income tax enforcement officer, challenges certain deductions as not being reasonably necessary. A trial is held before the Tax Commission at which T and O both offer evidence and *legal* argument concerning the deductions. The Tax Commission determines that some of the deductions are improper and assesses a deficiency against T. The order becomes final. T may not thereafter relitigate the deficiency for that year on the basis of different evidence or a *different legal* theory.

*Id.* at illustration 4 (emphasis added). Indeed, this illustration demonstrates not only the propriety of applying preclusive effect to a legal decision, but the propriety of applying *claim* preclusive effect to that decision, i.e., res judicata.

Here, as just discussed, the Department of Revenue hearing had the essential elements of adjudication. Specifically, the legal issues were briefed and argued by the parties, identified and formulated by the hearing officer, and decided and explained in the ten page written opinion. Thus, the above citations to the Restatement apply here. Since a prior court judgment precludes relitigation of the law under the principles of res judicata, and since in the circumstances of this case those principles apply to the prior administrative proceeding here, the administrative decision in this case precludes relitigation of the law by Apollo and its privies, as well as the facts. Furthermore, since the FSLIC as receiver is a privy of Apollo, it is precluded from relitigating the legal and factual elements of its tax refund claim which was adjudicated before and decided by the hearing officer of the Illinois Department of Revenue prior to this action. Therefore, defendant's motion to dismiss plaintiff FSLIC as receiver on res judicata grounds is granted.

## 2. *FSLIC as corporation.*

■ The res judicata analysis applied to FSLIC as corporation is similar to the analysis that was just applied to FSLIC as receiver. As just explained, the prior action went to final judgment, the cause of action there was the same as here, and the defendant there is the same as (or privy to) the defendant here. Since the prior administrative action contained the essential elements of adjudication, res judicata will bar this action by the plaintiff FSLIC as corporation if it is a privy of the prior action's plaintiff—Apollo. The court explained in the previous section of this opinion that Apollo and FSLIC as receiver were in substance the same entities in the administrative action since Apollo was in receivership at the time of that action. Thus, the question of applicability of res judicata reduces itself to whether the FSLIC as corporation is a privy of the FSLIC as receiver. If there is privity, then the FSLIC as corporation will be bound by the result of the earlier administrative action.

At first blush, it appears that FSLIC as corporation should never be considered a privy of FSLIC as receiver. "A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." Restatement (Second) of Judgments § 26(2) (1982). Since the FSLIC appeared in the earlier action (or at least was a privy to Apollo) in its capacity as receiver, the FSLIC in its capacity as corporation should not, one

might conclude, be bound here by the results of that action.

However, in this case such a conclusion would be incorrect. This is because in certain situations a party's appearance in different capacities in different actions may still necessitate the application of res judicata notwithstanding the different capacities. As comment c to Section 36 of the Restatement explains:

> The rule of this Section deals with the effects of difference in capacity as such. Rules in addition to those that differentiate a person's multiple capacities may result in the judgment's having effects with respect to a person who appears in litigation in different capacities. A person who appears in a representative capacity in behalf of interests that include his own individually is bound by the judgment in his individual capacity not because he is the same person who was previously a party but by virtue of his representative status in the first action.

Restatement (Second) of Judgments, § 36 comment c (1982).

This idea is more precisely set out in an illustration.

> A, on behalf of his child B, brings an action for injuries to B in which his claim includes amounts he expended for B's medical care. An adverse judgment precludes A from suing in his own capacity to recover the medical expenses.

Restatement (Second) of Judgments, § 36 comment c, illustration 7 (1982).

Thus, when a party appears in an earlier action in one capacity, and in that capacity effectively represents not only that capacity's interests but coincidentally the interests of that party in another capacity, then a later action in which the party appears in that other capacity is barred by virtue of the first judgment. This rule is consistent with the purposes and policies underlying res judicata in general. When a party's interest has been adequately litigated by a representative, judicial economy and repose mandate that the interest should not be relitigated by the party itself in a later

action. See 1B *Moore's Federal Practice* ¶ 0.411[3.–2] at pp. 427–49 (1984).

This rule must be applied here. When Apollo (and FSLIC as receiver) litigated the claim for the tax refund in 1982 before the hearing officer, FSLIC had already (as of 1976) purchased all of the assets of Apollo. (Even before then it was a creditor of over 90% of the assets, as plaintiffs repeatedly remind this court.) Any tax refund which Apollo and FSLIC as receiver may have obtained as a result of the administrative litigation would necessarily be an Apollo asset which, by virtue of the agreement to sell Apollo's assets to FSLIC as corporation, would have had to be turned over to FSLIC as corporation. Thus, when FSLIC as receiver was contesting the tax assessment, it was representing only the interest of FSLIC as corporation since that was the one and only entity which would benefit from the acquisition of any refund.

Furthermore, FSLIC as corporation had actual notice of this representation since in reality FSLIC as corporation and as receiver are the same entities. And being the same entities, FSLIC as receiver could as a practical matter advocate FSLIC as corporation's interests as effectively as could FSLIC as corporation. Therefore, under these circumstances, it is just to hold FSLIC as corporation bound by the results of the prior litigation. Its interests were fully, fairly and completely advocated by its representative, FSLIC as receiver. FSLIC as corporation is therefore bound by the results of the administrative action.

Plaintiffs seem to argue that this result is somehow unfair because barring the plaintiffs from litigating their tax refund claims here would mean that they would never have been afforded an opportunity to litigate their federal issues in a federal forum. In the administrative action, Apollo and FSLIC as receiver raised a federal issue (the National Housing Act violation) and that same issue is attempted here. Plaintiffs' argument about unfairness is premised on the assumption that litigants of federal issues always have a right to an unrestricted opportunity to relitigate in

federal court an issue already decided in state court if the issue first arose in a state proceeding. This argument was soundly rejected by the Supreme Court in *Allen v. McCurry,* 449 U.S. 90, 104, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980).

Furthermore, plaintiff's argument also assumes that it was *forced* to adjudicate its tax refund claim in the state administrative proceedings. As defendant correctly points out, this is not true. Apollo chose the state forum and it and its privies are bound by the results under res judicata. Of course, res judicata precludes plaintiffs here from relitigating all grounds for relief which were or could have been raised in the earlier action, so this would also include the supremacy clause issue raised here but not in the earlier suit. In insisting that Apollo chose its state forum, defendant does seem to have overlooked the possibility that federal courts often require litigants to exhaust any adequate and available state administrative remedies. *See, e.g., Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). If that were true here, then perhaps it could be said that Apollo did not itself freely choose the state forum; the exhaustion requirement could be said to have forced it there. Even so, at least for purposes of collateral estoppel, a litigant's inability to choose the first forum does not suspend the operation of the rules of preclusion. *Allen,* 449 U.S. at 104, 101 S.Ct. at 420. But more importantly, in this case Apollo actually did not have to resort to the state administrative forum. Apollo's administrative action was based on allegations that the state deprived Apollo of rights secured by federal laws. Thus, the action could have been characterized as a 42 U.S.C. § 1983 action. Since the Supreme Court has repeatedly insisted that state administrative remedies need *not* be exhausted in such actions, see, *e.g., Steffel v. Thompson,* 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974); *McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), Apollo could have brought its claims in federal court in the first instance and thus avoided the preclusive effect of res judicata

that it must now face on account of the prior administrative adjudication of the tax refund claim in the state proceedings. In short, then, there is nothing unfair—at least within the confines of Supreme Court law—with applying res judicata in this case.

### Conclusion

Defendant's motion to dismiss plaintiffs' complaint is granted in full. Plaintiffs' motion for summary judgment is denied.

It is so ordered.