## NORTHERN NATURAL GAS COMPANY, DIVISION OF INTERNORTH, INC., Petitioner,

### v.

## FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

**Panhandle Eastern Pipe Line Company, et al., Intervenors.**

No. 85–1044.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 24, 1986.

Decided March 11, 1986.

---

Allan W. Anderson, Jr., with whom David B. Ward, Washington, D.C., and Henry C. Rosenthal, Jr., Omaha, Neb., were on brief, for petitioner.

Andrea Wolfman, Atty., F.E.R.C., William H. Satterfield, General Counsel, Barbara Weller, Deputy Sol. and Joel M. Cockrell, Atty., F.E.R.C., Washington, D.C., were on brief, for respondent.

Raymond N. Shibley, Brian D. O'Neill and Patrick J. Whittle, Washington, D.C., were on brief, for intervenors, Panhandle Eastern Pipe Line Co., et al.

Before EDWARDS and GINSBURG, Circuit Judges, and FAIRCHILD,* Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit.

GINSBURG, Circuit Judge:

Northern Natural Gas Company (Northern) petitions this court for review of two Federal Energy Regulatory Commission (FERC or Commission) orders remarkable for their incoherence. The first order authorized an amendment to a contract between Northern and Panhandle Eastern Pipe Line Company (Panhandle) and Trunkline Gas Company (Trunkline), so as to allow Northern to purchase less gas transportation from Panhandle and Trunkline. Generating the controversy at hand, the Commission, both initially and on rehearing, declined to grant the authorization retroactively. FERC issued the initial order more than two years after Northern had first invoked its contractual right to ask Panhandle to reduce the transportation purchase quantity; the delay, Northern estimates, cost it about 1.3 million dollars. Northern and Panhandle now each charges the other with responsibility for the delay. In the orders Northern asks us to review, FERC raises questions about its statutory authority to grant retroactive authorizations, and blames both parties for the delay but leaves the entire cost on Northern. We vacate the two orders and remand this matter to the Commission so that it may issue an order reasoned with sufficient clarity to enable us to engage in meaningful review.

## I. BACKGROUND

Northern buys natural gas produced offshore Louisiana in the areas called "West Cameron Blocks 480, 543, and 616" (Blocks I, II, and III, respectively). Under three separate FERC authorizations and three separate contracts dated September 26, 1976, October 27, 1976, and May 24, 1977, for Blocks I, II, and III, respectively, Panhandle and Trunkline transport the gas for Northern to onshore facilities. Northern

*Sitting by designation pursuant to 28 U.S.C. § 294(d).

pays Panhandle and Trunkline a monthly demand charge based on the daily amount of transportation that Northern, by contract specification, is entitled to demand.

The contracts and Commission certificates specified an initial daily contract-demand quantity but provided that Northern could unilaterally reduce this quantity after five years of service, upon six months notice to Panhandle and Trunkline. Northern gave such notice for Blocks I and II by letters dated, respectively, May 26, 1981 and June 24, 1981. Over Northern's disagreement, Panhandle insisted that the reduction would require a formal contract amendment and sent Northern two proposed amendments, which Northern received on September 14, 1981. These amendments did reduce the daily contract-demand quantity, but for reasons apparently unrelated to the reduction, they also increased the unit charge that Northern would pay for transportation. Northern and Panhandle then negotiated for several months about the increase; eventually, in March 1982, Northern's General Manager signed the amendments. Panhandle, however, next requested verification that the General Manager was authorized to sign the amendments; Northern provided documentation to that effect; Panhandle still refused to accept the signature. In May 1982, a Northern Vice President finally signed the amendments.

On August 9, 1982, Panhandle attempted to implement the contract amendments through a tariff filing with FERC. On September 8, FERC rejected the filing; the Commission explained that, because authorization of an abandonment of service was at stake, the amendments had to be presented through a filing made under Section 7(b) of the Natural Gas Act (NGA), 15 U.S.C. § 717f(b).

Meanwhile, on March 15, 1982, Northern had sent Panhandle notice of a 50% reduction in the daily contract-demand quantity for Block III. Panhandle then sent Northern a proposed amendment, identical to the first two except for information specific to the block. Northern received the amend-

ment on August 19 and executed it on October 6.

Finally, on February 9, 1983, Panhandle filed under Section 7(b) for abandonments in all three blocks, requesting a retroactive effective date of February 1, 1982, for Blocks I and II and October 1, 1982, for Block III. Northern intervened in support of Panhandle and Trunkline. On September 23, FERC authorized the reductions effective as of the 1983 date of the order, not the requested 1982 dates. In rejecting the request for retroactivity, FERC noted that Panhandle and Trunkline had not even filed under Section 7(b) for the reductions as of the effective dates requested. The order also observed that Northern was contractually required to give Panhandle six months' notice (in fact, Northern gave more generous notice), and if the parties had any questions about the volume reductions, "then Panhandle and Trunkline should have made more timely filings." *Panhandle Eastern Pipe Line Company,* 24 F.E.R.C. ¶ 61,337 at 61,716 (Sept. 23, 1983) (Order).

Northern and Panhandle both requested rehearing on the denial of retroactivity. On November 20, 1984, FERC denied these requests. It noted: "Section 7(b) does not provide for retroactive abandonment authorizations." FERC further observed: "The untimely filings for appropriate Commission authorization appear to have resulted in good part from the failure of the parties to resolve their differences expeditiously. In light of this and of the prospective nature of Section 7 authorization, we shall not make the authorizations retroactive." *Panhandle Eastern Pipe Line Company,* 29 F.E.R.C. ¶ 61,236 at 61,489 (Nov. 20, 1984) (Order on Rehearing). Northern then petitioned this court for review.

II. FERC's STATUTORY AUTHORITY

We first consider whether the Commission had statutory authority to grant the relief here requested—a retroactive abandonment authorization. We hold that Section 16 of the NGA, 15 U.S.C. § 717o, does grant FERC such authority, and that Section 7(b) does not bar such relief.

Section 16 provides in pertinent part: "The Commission shall have power to perform any and all acts, and to ... make ... such orders ... as it may find necessary or appropriate to carry out the provisions of this [Act]." This provision gives the Commission "broad authority so as to do equity consistent with the public interest," *Columbia Gas Transmission Corp. v. FERC*, 750 F.2d 105, 109 (D.C.Cir.1984), and "to use means of regulation not spelled out in detail, provided the agency's action conforms with the purposes and policies of Congress and does not contravene any terms of the Act." *Niagara Mohawk Power Corp. v. FPC*, 379 F.2d 153, 158 (D.C. Cir.1967).

▮ Section 16 unquestionably gives FERC the authority, in fashioning remedies, to consider equitable principles, one of which is to regard as being done that which should have been done. *See id.* at 160. We therefore hold that in appropriate circumstances, the Commission's authority under Section 16 extends to the granting of retroactive abandonment authorizations so as to carry out the provisions of the NGA. *Cf. Consolidated Gas Transmission Corp. v. FERC*, 771 F.2d 1536, 1551 (D.C.Cir. 1985) (§ 16 gives authority "to order retroactive refunds when a gas company had improperly collected money under a tariff"); *Niagara Mohawk*, 379 F.2d at 157 (predecessor of § 16 gives authority retroactively to issue hydroelectric project licenses).

FERC, however, urges the court to defer to the Commission's conclusion, allegedly indicated in its orders here and elsewhere, that Section 7(b) bars retroactive abandon-ment authorization; thus, the Commission suggests, such relief would "contravene [one of the] terms of the Act." *Id.* at 158. It is not at all clear, we note initially, that the Commission has ever drawn such a conclusion in any of its orders. The initial Order in this case expressed no such opinion. The Order on Rehearing announced, without elaboration, FERC's determination that Section 7(b) "does not provide for retroactive abandonment authorizations." Order on Rehearing at 61,489. This cryptic statement could mean merely that Section 7(b) provides no affirmative authority for retroactive authorizations; or, FERC might have intended to say that the section positively prohibits them. The latter interpretation is rendered less likely by the fact that the Order on Rehearing rests not only on "the prospective nature of Section 7 authorization" but also on "the failure of the parties to resolve their differences expeditiously," *id.*, thus suggesting that a retroactive authorization might have been appropriate if the parties had behaved better.

FERC's other considerations of this issue are similarly unenlightening, and none unambiguously reaches the conclusion FERC now urges this court to adopt.[1] Indeed, a recent FERC order, *Trunkline Gas Company*, 33 F.E.R.C. ¶ 61,224 at 61,470 (Nov. 15, 1985), actually granted a retroactive abandonment authorization without any Commission statement accounting for the retroactivity. FERC now highlights, however, that this recent authorization was made effective as of a date after the Section 7 filing. At oral argument, counsel

---

1. FERC has visited this issue on six other occasions. On three, FERC denied retroactive relief under formulae virtually identical to the one recited in this case: Section 7(b) "does not provide for grants of retroactive abandonment authority." *See* ANR Pipeline Company, 33 F.E.R.C. ¶ 61,044 at 61,097 (Oct. 17, 1985); Michigan Consolidated Gas Company, 32 F.E.R.C. ¶ 61,490 at 62,120 (Sept. 30, 1985); Northern States Power Company, 29 F.E.R.C. ¶ 61,116 at 61,224 (Oct. 29, 1984). On another, FERC recited the formula yet again and added that it denied equitable relief "even if it was available" because the parties had failed to file a timely Section 7(b) application. Midwestern Gas Transmission Company, 23 F.E.R.C. ¶ 61,180 at 61,392 (May 5, 1983). At yet another time, FERC denied equitable relief for failure to file a timely application and added that a natural gas company's certificate obligations are not coextensive with its contractual obligations. *See United Gas Pipe Line Company*, 22 F.E.R.C. ¶ 61,144 at 61,233–34 (Feb. 10, 1983). Finally, on at least the one occasion described in text, FERC actually granted a retroactive abandonment authorization. *See Trunkline Gas Company*, 33 F.E.R.C. ¶ 61,-224 at 61,470 (Nov. 15, 1985).

for the Commission represented that FERC acted to approve retroactivity in *Trunkline Gas Company* under authority supplied by Section 16.

■ Noting this unhelpful record of Commission considerations of this issue, we today hold as a matter of law that Section 7(b) does not prohibit retroactive abandonment authorizations. That section provides in pertinent part: "No natural-gas company shall abandon ... any service rendered by means of [its] facilities, without the permission and approval of the Commission first had and obtained." This language, FERC maintains, seems to contemplate that Section 7(b) authorizations will be available only prospectively, that the natural gas company must first obtain authorization and only then abandon services. The Commission also refers us to *United Gas Pipe Line v. McCombs*, 442 U.S. 529, 99 S.Ct. 2461, 61 L.Ed.2d 54 (1979). In that case, the Supreme Court explicitly declined to decide whether Section 7(b) authorizes FERC to grant retroactive authorizations because the Commission, in any event, was within its discretion to deny the particular application in question. In the context of this disposition, the Court commented on the negative policy implications of "[f]requent retroactive action." *Id.* at 540–41, 99 S.Ct. at 2468–69.[2]

These Commission arguments, however, address only whether the language or purpose of Section 7(b) positively authorizes retroactive authorizations, not whether the section prohibits them. Even if Section 7(b)'s language granting affirmative authority is unambiguously and exclusively prospective, the provision simply does not speak to the question whether the Commission is forbidden to take retroactive action

under other provisions. And however grave the policy implications of "[f]requent retroactive action" by the Commission on filings under Section 7, those implications do not attend infrequent remedial actions taken with reasoned discretion under Section 16 to carry out the policies and purposes of the NGA.

### III. REASONED DISCRETION

■ FERC therefore had the discretionary authority to grant Northern's application for retroactive relief; we next consider whether it abused that discretion in this case. One element of the duty laid on agencies to engage in reasoned decision-making is the requirement that the agency express its reasons with clarity sufficient to permit a reviewing court to assure itself that the action is not arbitrary. The court will uphold the agency's explanation "though of less than ideal clarity, if the agency's path may reasonably be discerned, though of course the court must not be left to guess as to the agency's findings or reasons." *See Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C.Cir.1970) (footnotes omitted), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971). Because we find the agency's orders in this case to be incoherent, we remand the matter to the Commission to address the concerns expressed in this opinion.

FERC's Order on Rehearing, in declining to authorize the abandonment retroactively, offered as explanation only the fact that the parties shared the blame for the delay: "The untimely filings for appropriate Commission authorization appear to have resulted in good part from the failure of the parties to resolve their differences expeditiously." Order on Rehearing at 61,-

---

2. The petitioner in *McCombs* had argued that FERC should grant the requested authorization because the abandoner believed in good faith that it was not required to seek prior authorization. The Court warned that frequent discretionary authorizations of retroactive abandonments on the basis of good faith alone would create a three-fold "potential for disruption of § 7(b)'s approval procedure": (1) producing uncertainty about the status of all acreage nominally dedicated to interstate gas production; (2)

"creating an incentive for producers to delay seeking agency approval in the hope that they could later establish good faith"; and (3) diminishing the utility of § 7(b)'s hearing provision because in an application for retroactive authorization "the Commission would be required to determine on a hypothetical set of facts what action it would have taken had an application been timely filed." *United Gas Pipe Line v. McCombs*, 442 U.S. 529, 540–41, 99 S.Ct. 2461, 2468–69, 61 L.Ed.2d 54 (1979).

489. We fail to understand, however, how this observation led the Commission to its decision entirely to deny retroactive relief.

Our incomprehension stems from several roots. In the first place, the parties detrimentally affected by retroactive authorization—Panhandle and Trunkline, who would be retroactively deprived of Northern's demand charges—joined Northern in petitioning the Commission for such action. Yet FERC chose to deny the petition despite joinder of all interested parties in the retroactivity request.

Second, it appears from this record that Northern was not principally at fault for the delay, and even the Commission's Order on Rehearing acknowledges that Northern was not solely at fault.[3] Panhandle's decisions to require formal contract amendments, to include an unrelated unit charge increase in those amendments, to refuse to accept Northern's General Manager's signature on the amendments, and to wait several months to file a Section 7(b) petition after FERC rejected its tariff filing, appear to indicate irresponsible conduct, conceivably even a self-serving design to delay. Under these circumstances, we fail to see the public interest advanced by leaving all the costs for the delay with Northern.

Finally, we find FERC's failure to address these concerns even more incomprehensible in light of the fact that the Commission has granted retroactive relief in the past, *see supra* at 341–342,[4] and of the significant sum involved in this case. FERC's denial of retroactive relief will apparently require Northern to pay Panhandle approximately 1.3 million dollars for gas transportation that Northern did not want and had no contractual right to use. Under these circumstances, we are unable to understand the Commission's reasons for not exercising an authority that it has used under other circumstances which, so far as we can tell, seem less to invite equitable intervention.[5]

### CONCLUSION

Congress has granted the Commission broad remedial authority in Section 16 of the Natural Gas Act to carry out the difficult task of regulating the natural gas industry; this authority is broad enough to include discretionary retroactive abandonment authorizations under appropriate equitable circumstances. The Commission's discretion, of course, is bounded by the requirements of reasoned decisionmaking. FERC, in this case, has generated much fog concerning its authority, and has utterly failed to account for its seemingly inconsistent exercises of discretion. On remand, the Commission should address the concerns stated in this opinion. FERC may still determine not to grant retroactive abandonment authorization, but it must tell us why in a rational decision that does not slip from our grasp.

*It is so ordered.*

---

**3.** At oral argument and in its brief, counsel for the Commission argued that Northern was at fault for failing to "push" Panhandle by filing a complaint against it with the Commission. We find it difficult to discern this argument in the terse single sentence in the Order on Rehearing; and we are not at all confident that the introduction of another lengthy Commission proceeding would have reduced the delay. The argument is, in any event, inapposite because even if Northern was thus partially at fault, FERC offers not even a wisp of a reason why it saddled Northern with all of the costs the delay occasioned.

**4.** As noted in text, *see supra* at 341–342, the Commission in Trunkline Gas Company, 33 F.E.R.C. ¶ 61,224, made the abandonment authorization retroactive only to a date after the Section 7

petition. At oral argument, counsel for the Commission represented that the Commission has a policy of not granting relief retroactive to a date before the date of the petition and, for that reason, denied the request in this case for relief retroactive to a pre-petition date. But if FERC was acting under such a policy, we expect that, on remand, it will explain the general reasons for that policy and the specific reasons for not granting retroactive authorization effective at least as of the date of the petition in this case.

**5.** In *Trunkline Gas Company,* 33 F.E.R.C. ¶ 61,224, in which FERC granted retroactive relief, the Commission pointed to no equitable reasons for granting such relief other than that both parties desired it.