The UPJOHN COMPANY, Petitioner,

v.

FOOD AND DRUG ADMINISTRATION, Respondent.

HESS & CLARK, INC., Petitioner,

v.

FOOD AND DRUG ADMINISTRATION, Respondent.

Nos. 86–1204, 86–1245.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 22, 1987.

Decided Feb. 24, 1987.

As Amended March 5, 1987.

Eugene I. Lambert, with whom Richard F. Kingham, Ellen J. Flannery, James R. Stirn and Bruce N. Kuhlik, Washington, D.C., were on the brief, for petitioners.

Gerald C. Kell, Atty., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Margaret A. Cotter, Asst. Director, Office of Consumer Litigation, Dept. of Justice, Washington, D.C., Thomas Scarlett, Chief Counsel, Rockville, Md., and Michael M. Landa, Associate Chief Counsel for Enforcement, Food and Drug Admin., were on the brief, for respondent.

Before RUTH BADER GINSBURG, WILLIAMS and DOUGLAS GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

In these two cases drug manufacturers challenge the Food and Drug Administration's power to revoke certain waivers without first providing an opportunity for an adjudicatory hearing. We find these claims without merit.

Under the Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C. §§ 301–378 (1982 and Supp. III 1985), the FDA subjects

medicated animal feeds to two separate licensing requirements. First, the drug manufacturer must obtain an approved new animal drug application ("NADA") for the drug itself. 21 U.S.C. § 360b(a) (1982). Second, each feed manufacturer must obtain an approved medicated feed application ("MFA") authorizing the drug's use in that manufacturer's animal feed. *Id.* § 360b(m). Prior to the adoption of the NADA/MFA scheme in 1968, the Act imposed similar duties but applied a different terminology to the licensing of feed manufacturers ("new drug applications" ("NDAs") rather than MFAs).

In order to direct its enforcement resources to the most critical concerns, the FDA has long had a policy of selectively waiving the feed manufacturer licensing requirements. Where a drug manufacturer could persuade the FDA that a drug, as proposed to be used, did not pose a hazard to the public, the FDA issued a document—described by the parties in various ways—exempting feed manufacturers.

Under the 1968 version of the Act, petitioner Upjohn secured exemptions for certain uses of its drug lincomycin. Though these exemptions were in substance simply waivers of the MFA requirements, the FDA labelled Upjohn's filings as requests for "supplemental NADAs" and processed them under procedures technically applicable only to NADAs.

Petitioner Hess & Clark's exemptions have their origins in the pre–1968 version of the Act. In that era a mill producing a medicated feed was nominally required to have an approved NDA. *See* 21 U.S.C. § 355 (1964) *and* 21 U.S.C. § 321(p) (1964). Hess & Clark duly obtained exemptions from these requirements for certain uses of its drugs nitrofurazone and furazoli-

done. In the 1968 amendments Congress provided for continuation of approved NDAs.[1] Either by reason thereof, or by simple administrative momentum, the exemptions of the two Hess & Clark drugs came to apply to the MFA requirements, but were subject—as no one questions—to modification by whatever procedures the Act as amended may permit.

On March 3, 1986, after notice-and-comment rulemaking under 5 U.S.C. § 553 (1982), the FDA published a final rule establishing a new regime for waiver of the MFA requirements. 51 Fed.Reg. 7382 (1986). The new standard divides drugs into two categories. It exempts all feeds containing drugs in Category I, namely, those for which no withdrawal period[2] is required at the lowest use level for each species of animal for which they are approved. It generally denies exemption for feeds containing Category II drugs, namely those (a) for which a withdrawal period is required at the lowest use level for at least one species for which they are approved or (b) which pose carcinogenic concerns, regardless of whether a withdrawal period is required. The rule expressly revokes preexisting MFA waivers for Category II drugs. 51 Fed.Reg. at 7388.

Petitioners do not contest the rule on any substantive ground, presumably recognizing that in such a matter the FDA is entitled to a good deal of leeway. Nor do they contest the proposition that under the definitions adopted their drugs belong in Category II. They contend, however, that application of the rule to their drugs violates 21 U.S.C. § 360b(e), which requires "notice and opportunity for hearing" before the agency issues "an order withdrawing approval of [a NADA]."

---

**1.** The amendments stated that

any approval, prior to the effective date, of a new animal drug or an animal feed bearing or containing a new animal drug, whether granted by approval of a new-drug application [or various other means], shall continue in effect, and shall be subject to change in accordance with the provisions of the basic Act as amended by this Act.

Pub.L. No. 90–399, § 108(b)(2), 82 Stat. 353 (1968).

**2.** "The withdrawal period is the interval between the last administration of the drug and the time when the animal can be safely slaughtered for food or the milk can be safely consumed." Brief for FDA in No. 86–1204 at 16 n. 8.

Section 360b(e) applies only to withdrawal of a NADA, and it is exemptions from MFA requirements that are here in question. Petitioners contend, nonetheless, that their MFA exemptions should properly be characterized as part of the drugs' NADAs.[3] We find it unnecessary to resolve the issue, for we believe that, even if we were to accept petitioners' characterization, the FDA was entitled, under *American Airlines, Inc. v. Civil Aeronautics Board,* 359 F.2d 624 (D.C.Cir.1966), *cert. denied,* 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75 (1966), to diminish their entitlements under such licenses by means of notice-and-comment rulemaking.

In *American Airlines,* the court reviewed a rule by which the CAB confined the right to carry freight on a "blocked space" basis[4] to airlines providing exclusively cargo service. After the rule took effect, a number of airlines offering both cargo and passenger service filed tariffs offering "blocked space" service, which the CAB rejected solely on the basis of the new rule. The airlines argued that the rule diminished their rights under their existing CAB certificates, thus effectively modifying or suspending those certificates without the hearing required by § 401(g) of the Federal Aviation Act, 49 U.S.C. § 1371(g). Though accepting the airlines' characterization of the rule as affecting rights under existing certificates, the court held that it was a valid exercise of the CAB's power to "promulgate rules of general application consistent with the [Federal Aviation Act], and to deny an adjudicatory hearing to applicants whose applications on their face

showed violations of the rule." *American Airlines,* 359 F.2d at 628.

The court thus extended *United States v. Storer Broadcasting Co.,* 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956). The Court there upheld the authority of the Federal Communications Commission to deny initial license applications without a hearing, despite a statutory hearing requirement, where such applications failed to comply with requirements adopted by the FCC in an informal rulemaking. *Id.* at 200–05, 76 S.Ct. at 769–71. Both *American Airlines* and *Storer* exemplify the principle that no adjudicatory hearing is required where, as a result of generic rules that are otherwise procedurally and substantively valid, there is no contested issue.

The principle applies here. The FDA has promulgated a general rule establishing new criteria under which new animal drugs may enjoy exemption from MFA requirements. Petitioners concede that the rule is substantively consistent with the Act and that their drugs fall into the category denied exemption. Therefore, under *American Airlines,* the FDA may require petitioners to comply with the MFA requirements without affording them adjudicatory hearings.

The petitions are

*Dismissed.*

---

3. Petitioners look to different theories to arrive at this result. Upjohn relies on the FDA's characterization and treatment of its requests for MFA waivers; Hess & Clark on Congress's language, quoted *supra* n. 1, incorporating all preexisting rights into the post–1968 NADA/MFA scheme. The FDA, by contrast, characterizes the MFA waivers as mere administrative decisions not to enforce the statutory requirements.

4. Blocked space service is "essentially the sale of space on flights at wholesale rates, when 'blocked' or reserved by the user on an agreement to use a specified amount of space." *American Airlines,* 359 F.2d at 625.