**VALERO INTERSTATE
TRANSMISSION CO.,
Petitioner,**

v.

**FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.**

No. 88–4875.

United States Court of Appeals,
Fifth Circuit.

June 14, 1990.

John R. Staffier, McHenry & Staffier, Washington, D.C., for petitioner.

Thomas J. Lane, Joel M. Cockrell, Jerome Feit, Sol., F.E.R.C., Washington, D.C., for respondent.

James R. Lacey, Newark, N.J., for Public Service Elec. and Gas Co.

Robert G. Hardy, John W. Ebert, Washington, D.C., Jay W. Elston, R.V. Loftin, Jr., David A. Glenn, Clayton Smith, Transcontinental Gas Pipe Line Corp., Houston, Tex., for Transcontinental Gas Pipe Line Corp.

Before CLARK, Chief Judge, THORNBERRY, and SMITH, Circuit Judges.

THORNBERRY, Circuit Judge:

Valero Interstate Transmission Company ("Vitco"), a natural gas pipeline company, challenges, on jurisdictional and substantive grounds, two orders of the Federal Energy Regulatory Commission ("FERC") modifying a prior FERC order. The prior order authorized Transcontinental Gas Pipe Line Corporation ("Transco"), also a natural gas pipeline company, to abandon its obligation to purchase natural gas from Vitco prospectively from May 5, 1987, the date of the order. The orders that Vitco challenges in its petition for review made the abandonment authorization retroactive to December 12, 1983, when the natural gas purchase contract between Transco and Vitco expired. Finding no error in the challenged orders, we affirm.

## BACKGROUND

Vitco gathered and sold natural gas from South Texas to Transco under a contract dated February 17, 1959. On November 4, 1983, Transco timely notified Vitco in accordance with the gas purchase contract that it intended to terminate the contract effective December 12, 1983.

In January 1984, Transco filed a petition with FERC pursuant to section 7(b) of the Natural Gas Act ("NGA"), requesting authorization to abandon the jurisdictional service rendered by means of Transco's purchases of gas from Vitco. Section 7(b) provides:

> No natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment.

15 U.S.C. § 717f(b). Vitco protested the abandonment application and requested a hearing.

On November 16, 1984, Transco and Vitco entered into a letter agreement allowing Transco to stop purchasing gas from Vitco, with the exception of about 10,000 MCF per

day that Transco agreed to continue purchasing until June 30, 1985.[1] This letter agreement was conditioned upon FERC approval. Transco continued to purchase the quantities of gas required by the letter agreement until June 30, 1985.

Meanwhile Vitco applied to FERC for authorization for it and its producers to abandon sales to Transco in excess of whatever amount FERC might order Transco to continue purchasing, and authorization to sell the gas to other customers in interstate commerce. Vitco's request was designed to allow it temporarily to make limited-term sales to new customers until a long-term arrangement could be worked out, because Vitco was experiencing problems with its producers as a result of Transco's diminished purchases. One of Vitco's producers separately applied for authorization to abandon sales to Vitco. Additionally, Vitco was ordered by a Texas district court to continue purchasing gas from another one of its producers until June 30, 1985.

On August 2, 1985, FERC issued an order approving a settlement agreement between Vitco and its producers of gas dedicated to Transco. *Transcontinental Gas Pipe Line Corp.*, 32 FERC ¶ 61,208 (1985). The agreement temporarily authorized Vitco to abandon sales of gas to Transco, to abandon purchases of the Transco-dedicated gas from its producers, and to seek to market that gas to other customers.[2] In the same order FERC dismissed Transco's application for abandonment authorization for lack of jurisdiction, relying on its earlier order in *Mississippi River Transmission Corp.*, 30 FERC ¶ 61,155 (1985). In *Mississippi River Transmission* the Commission held that the cessation of purchases upon the expiration of a gas purchase contract does not constitute abandonment of a jurisdictional service, and hence regulatory approval is not required.

Valero petitioned this court for review of that part of the FERC order of August 2,

1985 dismissing Transco's application. We reversed and remanded to FERC for further proceedings. *Valero Interstate Transmission Co. v. FERC*, 804 F.2d 1406 (5th Cir.1986). In doing so, we relied on the D.C. Circuit decision reversing *Mississippi River Transmission*, holding that purchases of gas constitute a jurisdictional service under section 7(b) of the NGA and therefore FERC approval is required for abandonment of such purchases. *See Panhandle Eastern Pipe Line Co. v. FERC*, 803 F.2d 726 (D.C.Cir.1986).

Thereafter, Transco filed a motion urging FERC either to approve or to expedite its application for abandonment authorization. For the first time Transco requested that permission to abandon its purchase obligations be granted retroactively to December 12, 1983, the date on which the contract with Vitco terminated. Vitco again opposed abandonment authorization and requested a hearing.

FERC found a hearing to be unnecessary and on May 5, 1987, issued an order authorizing Transco to abandon permanently its purchases of gas from Vitco prospectively from that date and authorizing Vitco to abandon permanently its sales to Transco. *Mississippi River Transmission Corp.*, 39 FERC ¶ 61,113 (1987). FERC recognized that retroactive abandonment might be warranted by the fact that FERC's initial misinterpretation of its jurisdiction was what caused the delay in the order's issuance, but then ruled that it was unnecessary to make abandonment retroactive in light of the settlement agreement approved on August 2, 1985, allowing Vitco temporarily to abandon sales to Transco and purchases from its producers.

Even though the Commission granted Transco's abandonment authorization prospectively and not retroactively as Transco requested, Transco did not apply for rehearing of the May 5, 1987 order. Vitco

---

1. The purchases of 10,000 MCF per day originally were to continue until May 1, 1985, but the termination date was extended to June 30, 1985 by agreement between Transco and Vitco.

2. The temporary abandonment authorization originally was to last until January 29, 1986, and was extended to March 31, 1987 and again to March 31, 1988. *See Valero Interstate Transmission Co.*, 36 FERC ¶ 61,021 (1986), and 38 FERC ¶ 61,260 (1987).

and other parties whose abandonment applications were also covered by the May 5, 1987 order sought rehearing of various aspects of the order other than its nonretroactive effect. On February 5, 1988, FERC denied those petitions for rehearing. *Mississippi River Transmission Corp.*, 42 FERC ¶ 61,171 (1988).

On March 7, 1988, Transco filed a timely petition for rehearing of the February 5, 1988 order on the ground that the order had generated confusion as to Transco's minimum bill and related obligations to Vitco under the expired contract. A minimum bill is a provision of a gas purchase contract or certificate approved by FERC requiring a pipeline customer to pay for a minimum volume of gas whether or not the customer actually purchases that amount of gas. *See Wisconsin Gas Co. v. FERC*, 770 F.2d 1144, 1150 (D.C.Cir.1985), *cert. denied*, 476 U.S. 1114, 106 S.Ct. 1968, 90 L.Ed.2d 653 (1986). Transco urged the Commission to clarify the order because Vitco had recently sued Transco, asserting that Transco had substantial minimum bill liability for the period between contract expiration and the May 5, 1987 order. Transco suggested that the best means of clarifying the order would be to make abandonment retroactive to the date of expiration of the contract, December 12, 1983.

Vitco opposed this rehearing request on the ground that it was really an attempt to relitigate the effective date of abandonment authorization, which had been resolved in the May 5, 1987 order. Vitco argued that Transco could not now request a rehearing of that order issued more than ten months earlier.

On April 6, 1988, FERC issued a tolling order granting rehearing "solely for the purpose of affording the Commission additional time to consider the request for rehearing." On July 11, 1988, FERC issued an order dismissing Transco's request for rehearing as not timely filed within 30 days after the issuance of the May 5, 1987 order, because the request in fact addressed the effective date of the abandonment, which was decided in the May 5 order and not in the February 5, 1988 order. *Transconti-*

*nental Gas Pipe Line Corp.*, 44 FERC ¶ 61,046 (1988).

On its own motion, however, FERC modified its May 5, 1987 order to authorize abandonment retroactive to December 12, 1983. With respect to volumes of gas actually delivered between December 12, 1983 and June 30, 1985 pursuant to the agreement between Transco and Vitco (10,000 MCF per day), FERC made the abandonment effective retroactive to June 30, 1985. FERC said it was acting to correct its previous misunderstanding of the situation between Transco and Vitco on which it had based its belief that retroactive abandonment was unnecessary. It explained that its May 5, 1987 order had erroneously held that Transco did not need retroactive abandonment in order to be relieved of any potential minimum bill obligations incurred after the underlying contract had expired because the settlement agreement approved on August 2, 1985 allowed temporary abandonment by Vitco and its producers.

Vitco filed a timely application for rehearing of the July 11, 1988 order. FERC denied rehearing on November 17, 1988, maintaining that it had authority to modify the May 5, 1987 order because that order had never become final. *Transcontinental Gas Pipe Line Corp.*, 45 FERC ¶ 61,238 (1988). FERC also reiterated that the only reason it had not authorized retroactive abandonment in its earlier order was because it believed such action to be unnecessary under the terms of the settlement agreement approved on August 2, 1985. Vitco now petitions this court to set aside the July 11, 1988 and November 17, 1988 orders.

## DISCUSSION

### I. *FERC's Jurisdiction to Modify a Prior Order*

Vitco first argues that FERC did not have jurisdiction to modify its May 5, 1987 abandonment order so as to make Transco's abandonment authorization retroactive because Transco did not file a timely petition for rehearing raising the issue of retroactivity, and therefore the May 5, 1987

order became final as to that issue when the time for filing a petition for rehearing expired.

FERC modified the May 5, 1987 order on its own motion pursuant to section 19(a) of the NGA, which provides, in pertinent part:

Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this Act.

15 U.S.C. § 717r(a). This provision gives the Commission the power to correct an order "until such time as the record on appeal has been filed with a court of appeals or the time for filing a petition for judicial review has expired." *Pan American Petroleum Corp. v. FPC*, 322 F.2d 999, 1004 (D.C.Cir.1963).

Obtaining judicial review of a FERC order has a jurisdictional prerequisite: applying for rehearing within 30 days after issuance of the order. 15 U.S.C. § 717r(a). A party aggrieved by a FERC order has 60 days after FERC issues an order upon an application for rehearing in which to file a petition for judicial review. 15 U.S.C. § 717r(b). If no one files an application for rehearing within 30 days of the FERC order, the time for judicial review expires at the end of the 30–day period, the FERC order becomes final, and FERC can no longer modify the order. *See Hirschey v. FERC*, 701 F.2d 215, 217–18 (D.C.Cir.1983).

■ Vitco urges that because Transco failed to file a petition for rehearing requesting retroactive abandonment authorization within 30 days of the May 5, 1987 order, that order became final as to the issue of retroactivity. In other words, Vitco contends that a timely petition for rehearing keeps FERC's jurisdiction alive only as to those particular issues raised in the petition. Since Vitco did not raise the issue of retroactivity in its petition for rehearing, Vitco contends FERC no longer had the authority to modify its order to authorize retroactive abandonment.

The recent case of *Tennessee Gas Pipeline Co. v. FERC*, 871 F.2d 1099 (D.C.Cir. 1989), disposes of Vitco's argument. In *Tennessee Gas*, the court upheld FERC's conclusion that it had authority under the NGA to modify a prior order *sua sponte*, even as to matters not raised in a timely petition for rehearing, as long as a petition for rehearing of that order was timely filed on some other grounds. *Tennessee Gas*, 871 F.2d at 1107–09. In other words, the timely filing of any petition for rehearing prolongs the life of all issues for purposes of modification on the Commission's own motion, even of issues not raised in that petition, because the order does not become final and nonreviewable until 60 days after the Commission rules on the pending petition. *Id.; see also Swanson Mining Corp. v. FERC*, 790 F.2d 96, 100–101 (D.C.Cir. 1986) (interpreting the same language in § 313(a) of the Federal Power Act). The D.C. Circuit found support for this view in judicial interpretations of similar language in other statutes: "Virtually the same language in other statutes has been consistently interpreted as granting the agency power to modify *any* aspect of an order at any time until an appeal has been filed." *Tennessee Gas*, 871 F.2d at 1108 (emphasis in original) (citing, *inter alia, International Union of Mine, Mill and Smelter Workers v. Eagle–Picher Mining and Smelting Co.*, 325 U.S. 335, 65 S.Ct. 1166, 89 L.Ed. 1649 (1945) (National Labor Relations Act); *New York v. United States*, 568 F.2d 887, 893 & n. 9 (2d Cir.1977), *cert. denied*, 449 U.S. 887, 101 S.Ct. 242, 66 L.Ed.2d 113 (1980) (Interstate Commerce Act)).

Accordingly, Transco's failure to apply for rehearing of the May 5, 1987 order within 30 days did not bar FERC from modifying that order on its own motion, because Vitco's petition for rehearing prevented the order from becoming final.

■ Vitco offers an alternative reason why FERC lacked authority on July 11, 1988 to modify the May 5, 1987 order: The order of February 5, 1988 denying Vitco's petition for rehearing became final and nonreviewable 60 days after February 5, or

on April 5, 1988. FERC takes the position that the tolling order issued on April 6, 1988 in response to Transco's March 7 rehearing request kept FERC's jurisdiction alive until it issued the July 11, 1988 order. Vitco contends, however, that because FERC later vacated its tolling order and dismissed Transco's March 7, 1988 petition as an untimely request for rehearing of the May 5, 1987 order, Transco's March 7 petition was a legal nullity that could not prolong the Commission's jurisdiction, and the tolling order was devoid of legal effect because it was issued one day too late.

We agree with FERC that by issuing the April 6 order keeping open consideration of Transco's March 7, 1988 petition for rehearing, FERC indicated that it was considering action regarding the proceeding, and therefore the February 5 order did not become final so as to cause expiration of the time for filing for judicial review. The April 6 order was timely as a response to Transco's petition for rehearing because it was issued on the 30th day after Transco timely filed its petition;[3] if FERC had not issued the tolling order, Transco's petition would have been deemed denied by operation of law after 30 days. *See* 15 U.S.C. § 717r(a).

Despite Vitco's attempts to distinguish it, we think the case of *Cities of Campbell & Thayer v. FERC*, 770 F.2d 1180 (D.C.Cir. 1985), is instructive. That case involved section 313 of the Federal Power Act, which is essentially identical to section 19 of the NGA. *See* 16 U.S.C. § 825*l;* 15 U.S.C. § 717r. The petitioners in *Cities of Campbell* filed an untimely request for rehearing of a FERC order. When the request was denied as untimely, the petitioners filed a request for rehearing of the order denying rehearing. The Commission then denied the second request for rehearing but decided *sua sponte* to reconsider the very first order for which the petitioners had filed their initial rehearing request. *Id.* at 1182. The D.C. Circuit found that by staying the first order and deciding to reconsider that entire order, FERC made

clear that it had not yet made a final decision in the proceeding, and the first order was therefore not a final, reviewable order. *Id.* at 1184. Similarly, in this case FERC's tolling order of April 6, 1988 made clear that FERC had not yet made a final decision in the proceeding, and the May 5, 1987 order was therefore still open for its consideration.

Moreover, we agree with FERC that its authority to modify its orders is not contingent upon the underlying validity of any petition for rehearing but only upon whether its orders have become final and the time for filing an appeal has expired. Transco's March 7 filing, whether or not later dismissed as untimely, was within the Commission's jurisdiction to consider at the time it was filed. The Commission necessarily had jurisdiction to decide whether to grant or deny the rehearing request. The April 6 tolling order postponed that decision and indicated that FERC wished to keep the proceedings open.

Finally, Vitco urges that if we accept the Commission's position, a litigant could indefinitely delay the finality of an order by filing a series of papers styled as petitions for rehearing to keep the proceedings open in the hope that FERC will decide to modify an order on its own motion. We think this is unlikely to become a problem. A person aggrieved by a FERC order who wants to obtain judicial review must first petition for rehearing. *See* 15 U.S.C. § 717r(a). It seems improbable that such a person would file multiple petitions for rehearing, thereby delaying the finality needed to obtain judicial review. Addressing an argument similar to Vitco's, the Third Circuit found that the 60–day period to file for judicial review under section 313(b) of the Federal Power Act was tolled while FERC considered a timely petition for rehearing of an issue addressed in an earlier order on rehearing. *Cities of Newark, New Castle, and Seaford v. FERC*, 763 F.2d 533, 545 (3d Cir.1985). The court said that concern "over the prospect of dilatory, repetitive petitions for rehearing can readily be

---

**3.** Transco's March 7, 1988 petition was timely as a petition for rehearing of the February 5, 1988 order because the 30th day, March 6, fell on a Sunday.

remedied by Commission regulation." *Id.* at 542–43. We agree.

## II. *Retroactive Abandonment Authorization*

Vitco argues that even if FERC had jurisdiction to modify its May 5, 1987 order in its July 11, 1988 order, the decision authorizing Transco's abandonment of service retroactive to December 12, 1983 was arbitrary, capricious, and unsupported by substantial evidence.

■ Section 16 of the NGA authorizes FERC to perform all acts and to issue, amend, and rescind all orders it finds necessary or appropriate to carry out the provisions of the NGA. 15 U.S.C. § 717*o*. Because section 16 gives FERC the authority to consider equitable principles in fashioning remedies, the Commission's broad discretionary authority under section 16 extends in appropriate equitable circumstances "to the granting of retroactive abandonment authorizations so as to carry out the provisions of the NGA." *Northern Natural Gas Co. v. FERC*, 785 F.2d 338; 341 (D.C.Cir.1986). Moreover, section 7(b) of the NGA, requiring Commission authorization for abandonment of jurisdictional service, does not prohibit retroactive abandonment authorizations. *See id.* at 342. Although section 7(b)'s language does not affirmatively grant authority for retroactive abandonment authorizations, it does not prohibit retroactive action under other provisions such as section 16. Thus, FERC may issue retroactive abandonment authorizations at its discretion, and courts review such orders for abuse of discretion. *Id.* However, the Commission must clearly express its reasons so that a reviewing court can determine that the action was not arbitrary. *Id.*

■ Vitco contends that *Northern Natural* is not applicable to this case because in *Northern Natural* the parties all agreed that abandonment should be made retroactive. The D.C. Circuit, however, did not restrict its holding in *Northern Natural* to cases in which all parties support retroactive abandonment. Agreement as to retroactivity was merely one of the particular circumstances in that case that could have justified a discretionary grant of retroactivity. *Northern Natural,* 785 F.2d at 343. We do not think the statutory discretion given to FERC is limited to cases in which all parties support retroactive abandonment.

■ In its July 11, 1988 order, FERC based its decision to make the abandonment retroactive on two grounds: (1) that it previously had not granted Transco retroactive abandonment because it had erroneously understood that such action was unnecessary under the Vitco–Transco settlement, and (2) that there was no basis on equitable grounds to treat Transco differently from the Mississippi River Transmission Corporation ("MRT"), to which FERC granted retroactive abandonment in the May 5, 1987 order. The Commission elaborated upon this second reason in its November 17, 1988 order denying rehearing:

> Transco filed a timely request [for] abandonment authorization, indicating that it no longer desired to receive gas. Clearly, it would be inequitable to force Transco to pay demand charges to Vitco for gas which it did not want or take under the circumstances of this case.

45 FERC ¶ 61,238 at 61,705. Vitco argues that neither of these reasons justifies FERC's decision.

Vitco notes that there is no indication in the May 5, 1987 order that FERC issued the order based on a misunderstanding of the settlement terms. Indeed, the few comments in that order concerning the settlement approved by FERC on August 2, 1985 are correct:

> [T]he same order that dismissed Transco's application also approved a limited-term settlement which has allowed Vitco, and the producers selling gas to Vitco for resale to Transco, to abandon temporarily their sales to Transco and make new interruptible sales to other pipelines.

39 FERC ¶ 61,113 at 61,430. But the settlement approved in August 1985 did not involve Transco; it was a settlement between Vitco and its principal producers.

The November 1984 letter agreement between Transco and Vitco was never approved by the Commission.[4] Additionally, in the February 5, 1988 order denying rehearing, FERC said the May 5, 1987 order "does not in any way constitute a prejudgment regarding the pipelines' liability to the former sellers for costs incurred by them in reliance on the certificates." 42 FERC ¶ 61,171 at 61,611.

But since FERC also distinguished between the situations of Transco and MRT on the ground that the settlement in the Transco case appeared to preclude the kinds of damages that MRT incurred by not making alternative arrangements, it is evident that FERC was confused about how the settlement it approved in August 1985 affected Transco. FERC erroneously believed that the settlement it approved in August 1985 would afford adequate relief to Transco; by contrast, in the MRT case FERC found that retroactive abandonment was needed to afford adequate relief to MRT, which had made no alternative arrangements while awaiting action on its application. FERC later recognized this confusion when Transco informed it that Vitco had brought a separate lawsuit demanding large minimum bill charges for gas that Transco did not take after the contract had terminated. FERC tried to redress the effects of its confusion by issuing the July 11 order.

On appeal, the Commission provides additional explanations of the equitable grounds for its decision:

First, Transco was not responsible for the delay in the resolution of the abandonment proceeding, which resulted instead from FERC's initial conclusion on August 2, 1985, that Transco did not have to seek abandonment authorization. This court reversed and remanded because that legal conclusion was erroneous. In *Northern Natural,* one of the principal circumstances mentioned in support of retroactive abandonment was that delay was not the fault of the party seeking abandonment. *Northern Natural,* 785 F.2d at 343.

Second, Transco's failure to request retroactive abandonment in its initial January 1984 application was understandable because at that time FERC had taken the position that section 7(b) of the NGA did not allow retroactive abandonment. *See Midwestern Gas Transmission Co.,* 23 FERC ¶ 61,180 (1983). Only in 1986 did an appellate court hold that FERC had the authority in appropriate circumstances to grant retroactive abandonment authorizations. *Northern Natural,* 785 F.2d at 341.

Third, Vitco contributed to the Commission's misunderstanding of the settlement by representing that the November 1984 letter agreement partially resolved the minimum bill problem. In its May 17, 1985 pleading, Vitco said the Transco–Vitco interim settlement agreement "provided that Transco would have no further liability to Vitco for sales prior to January 1, 1985. Consequently, Transco would no longer be liable for take-or-pay claims made by Vitco's producers or for Vitco's minimum bill."

We think the Commission sufficiently addresses Vitco's arguments against retroactive abandonment in this case. To Vitco's argument that Transco's situation was different from MRT's because Transco filed its application for abandonment authorization after the contract had expired, the Commission responds that it has granted retroactive abandonment on other occasions even when the application for authorization was filed after contracts had expired. *E.g., Transcontinental Gas Pipe Line Corp.,* 45 FERC ¶ 61,178 (1988) (application filed February 24, 1988; abandonment granted retroactive to December 31, 1984); *Transcontinental Gas Pipe Line Corp.,* 37 FERC ¶ 61,111 (1986) (application filed March 28, 1986; abandonment grant-

---

**4.** Vitco apparently takes the position that the November 1984 letter agreement between Transco and Vitco was never effective because that agreement was never approved by FERC, as was required by the agreement's own terms. That appears to be the basis of Vitco's separate lawsuit alleging that Transco owes it continuing minimum bill obligations for the entire period before abandonment was granted in the May 5, 1987 order. Transco nevertheless complied with the terms of the agreement and its amendments by continuing to purchase 10,000 MCF daily until June 30, 1985.

ed retroactive to January 1, 1986). The date of the application is just one of various equitable considerations impinging on retroactive abandonment.

Vitco also claims that the delay caused by FERC's misinterpretation of the law requiring abandonment authorization hurt all parties, including Vitco. The delay prolonged uncertainty surrounding the long-term availability of the gas dedicated to Transco; the settlement allowed Vitco to make other arrangements only in the short term. Retroactive abandonment relieved Transco of potential charges by Vitco for Transco's refusal to take any more gas, but did nothing to relieve Vitco's burdens caused by the delay. Vitco says its demand charges were specifically designed to compensate Vitco for being ready, willing, and able to meet Transco's demands, regardless of actual takes, and complains that retroactive abandonment takes that compensation away from Vitco. Although this is an important consideration, we think FERC acted within its discretion in finding that other factors carried more weight.

We think the Commission did not abuse its discretion in granting retroactive abandonment to Transco. The primary factor weighing in favor of retroactivity is that FERC would have granted Transco retroactive abandonment in the May 5, 1987 order if it had not believed that the settlement it approved in August 1985 solved all disputes between Transco and Vitco regarding Transco's obligations to take certain amounts of gas. But for this misconception, FERC would have granted retroactive abandonment in the May 5, 1987 order, as it granted to MRT. This reasoning is adequately set forth in the July 11, 1988 and November 17, 1988 orders.

Based on the foregoing, the orders of the Commission challenged by Vitco are AFFIRMED.