**PANHANDLE EASTERN PIPE LINE COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

Mississippi River Transmission Corp., Trunkline Gas Company, Indiana Gas Company, Inc., Laclede Gas Company, Intervenors.

**TRUNKLINE GAS COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

Laclede Gas Company, Panhandle Eastern Pipe Line Co., Indiana Gas Company, Inc., Mississippi River Transmission Corp., Intervenors.

Nos. 89–1354, 89–1355.

United States Court of Appeals, District of Columbia Circuit.

Argued April 30, 1990.

Decided June 29, 1990.

Raymond N. Shibley, with whom Bruce W. Neely, and Judy M. Johnson were on the brief, for petitioners in No. 89–1354 and 89–1355. Brian D. O'Neill also entered an appearance for petitioners.

Joel M. Cockrell, Atty., F.E.R.C., with whom William S. Scherman, Gen. Counsel, and Jerome M. Feit, Atty., F.E.R.C., were on the brief, for respondent in both cases.

David T. Andril, with whom Sarah P. Clement, Juanita Feigenbaum and Kenneth J. Neiss were on the joint brief, for intervenors Mississippi River Corp. and Laclede Gas Co. in Nos. 89–1354 and 89–1355.

Raymond N. Shibley, Brian D. O'Neill and Bruce W. Neely, entered appearances for intervenor Trunkline Gas Co. in Nos. 89–1354 and 89–1355.

Ronald E. Christian and Tom Rattray, entered appearances for intervenor Indiana Gas Co., Inc. in both cases.

Before EDWARDS, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

We deal here with the aftermath of our decision in *Panhandle Eastern Pipe Line Co. v. FERC*, 803 F.2d 726 (D.C.Cir.1986) (*Panhandle I*). There we held that an interstate pipeline's discontinuance of natural gas *purchases* is an abandonment of "service" within the meaning of § 7(b) of the Natural Gas Act, 15 U.S.C. § 717f(b) (1988), and thus requires the approval of the Federal Energy Regulatory Commission. On remand the Commission entertained and granted the buyer's application, but also made it retroactive. FERC chose retroactivity solely, so far as we can determine, because it regarded the seller's insistence on the rights found in *Panhandle I* as a kind of lese majeste. Finding no legitimate basis for the retroactivity, we reverse and remand the case to the Commission.

Since the early 1960s petitioner Trunkline Gas Company has sold gas to intervenor Mississippi River Transmission Corporation ("MRT") for resale to distributors in the greater St. Louis and southwestern Illinois areas. The sales were made under contracts between the two and were authorized by certificates issued by FERC and its predecessor, the Federal Power Commission. In 1983 MRT gave Trunkline notice that it would exercise its contractual right to end the purchases, effective May 1, 1985. It suggested that Trunkline should file an application under § 7(b) to abandon its sales service to MRT. As Trunkline never filed such an application, MRT filed to abandon its "purchase service." See Application for Order Permitting and Approving Abandonment of Service (April 12, 1984). FERC dismissed the application, holding that it had no jurisdiction over an abandonment of purchases so long as there was no effort to abandon jurisdictional facilities used in connection with them. *Mississippi River Transmission Corp.*, 30 FERC ¶ 61,155 at 61,327, reh'g denied 31 FERC ¶ 61,100 (1985). The Commission held that MRT was free to stop buying natural gas from Trunkline without prior Commission authorization.

In *Panhandle I* we reversed at the behest of the seller, Trunkline, and its parent and customer, Panhandle Eastern Pipe Line Company (a petitioner here also). On the strength of *United Gas Pipe Line Co. v. FPC*, 385 U.S. 83, 87 S.Ct. 265, 17 L.Ed.2d 181 (1966), we held that a discontinuance of purchases was indeed an abandonment requiring FERC's consent. *Panhandle I*, 803 F.2d at 728–30. One result was that MRT's obligation to pay demand and minimum bill charges (to the tune of about $18 million a year) continued beyond MRT's intended cancellation date of May 1, 1985. On remand the Commission granted the abandonment, not only prospectively but also retroactively to May 1, 1985. See *Mississippi River Transmission Corp.*, 39 FERC ¶ 61,113 (1987), reh'g denied 42 FERC ¶ 61,171 (1988). The case was again appealed to this court but at the request of the Commission we remanded so it could reconsider its decision in light of the inter-

vening decision in *United Gas Pipe Line Co.*, 43 FERC ¶ 61,253, reh'g denied 44 FERC ¶ 61,357 (1988). See *Trunkline Gas Co. v. FERC*, Nos. 88–1137 and 88–1266, Order (D.C.Cir. Nov. 22, 1988).

On the second remand, the Commission found the case controlled by its *United* decision. That had in turn relied on Order No. 490, III FERC Stat. & Reg. ¶ 30,797, 53 Fed.Reg. 4121 (1988), pet. for review filed sub nom. *Marathon Oil Co. v. FERC*, No. 88–3666 (6th Cir. filed, July 26, 1988; held in abeyance, Sept. 15, 1988), codified at 18 CFR § 157.21 (1989), which allows unilateral abandonment of purchases at the end of a contract if the purchaser pipeline has accepted a blanket certificate obliging it to provide open-access transportation. As in *United*, the Commission granted MRT abandonment, conditioned on MRT's acceptance of a blanket certificate. See *Mississippi River Transmission Corp.*, 46 FERC ¶ 61,342 at 62,052 (*"Order"*), reh'g denied 47 FERC ¶ 61,262 (1989); see also *United Gas Pipe Line*, 43 FERC at 61,693. Once again, however, the Commission made the order retroactive to May 1, 1985 so long as MRT filed for its blanket certificate within 60 days and accepted the certificate when issued. *Order*, 46 FERC at 62,053.

## I.

We can dispose quickly of Trunkline's attack on the prospective grant of abandonment. Petitioners' main argument is that the Commission granted approval without any inquiry into the particulars of the case. They note that § 7(b) of the NGA permits abandonment only if the Commission finds "after due hearing ... that the present or future public convenience or necessity permit such abandonment." 15 U.S.C. § 717f(b). Under *Transcontinental Gas Pipe Line Corp. v. FPC*, 488 F.2d 1325, 1328 (D.C.Cir.1973), the argument goes, this standard requires that "all factors relevant to the determination of which course of action best promotes the overall public interest must be fully considered." As the Commission relied on a finding made in a rulemaking that one specific condition—ac-

ceptance of a blanket certificate—would justify a purchase abandonment, it never held a particularized hearing.

■ It is far too late in the day to claim that an agency may not simplify adjudications by resolving issues in a rulemaking. See *Heckler v. Campbell,* 461 U.S. 458, 467, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983). Specifically, the Commission may use a rulemaking to identify circumstances where the public interest will be served by a particular consent, and then limit the scope of later adjudications to (1) whether those circumstances are present, and (2) where appropriate, whether any special factors in the particular case make the general rule inapplicable. See *American Airlines, Inc. v. Civil Aeronautics Bd.,* 359 F.2d 624 (D.C.Cir.1966) (*en banc*); *Upjohn Co. v. FDA,* 811 F.2d 1583, 1585 (D.C.Cir.1987). In *Wisconsin Gas Co. v. FERC,* 770 F.2d 1144, 1165–66 (D.C.Cir. 1985), we approved the Commission's use of a rulemaking to modify already-filed tariffs on the grounds that their inclusion of certain costs in a minimum bill rendered them unjust and unreasonable. And in *Associated Gas Distributors v. FERC,* 824 F.2d 981 (D.C.Cir.1987), we found "no procedural objection to the Commission's identification of circumstances, in an otherwise valid rulemaking, which automatically trigger its approval of abandonment (i.e., establish a system of 'pre-granted' abandonment approval)." *Id.* at 1015 n. 17.

In *Mobil Oil Exploration & Producing Southeast Inc. v. FERC,* 885 F.2d 209, 222–23 (5th Cir.1989), stay granted sub nom. *Mobil Oil Exploration & Producing Southeast Inc. v. United Distrib. Cos.,* —— U.S. ——, 110 S.Ct. 830, 107 L.Ed.2d 826, cert. granted —— U.S. ——, 110 S.Ct. 2585, 110 L.Ed.2d 266 (1990), the Fifth Circuit invalidated a Commission regulation allowing pre-granted abandonment of producer sales where the abandonment would effectively enable the producer to raise its wellhead prices above previously imposed ceilings. 885 F.2d at 222–23. One may read the opinion as addressed narrowly to that situation, in which the Commission's decision was arguably in tension with the Nat-

ural Gas Act's primary purpose of protecting consumers. See *FPC v. Hope Natural Gas Co.,* 320 U.S. 591, 610, 64 S.Ct. 281, 291, 88 L.Ed. 333 (1944). That of course is not our situation. To the extent that the *Mobil* court reads *United Gas Pipe Line Co. v. McCombs,* 442 U.S. 529, 99 S.Ct. 2461, 61 L.Ed.2d 54 (1979), as barring *any* provision for generic pre-granted abandonment, we disagree. In *United* the Court merely reversed a court of appeals decision treating the apparent exhaustion of reserves as automatically bringing about an abandonment; the Court therefore reinstated a Commission order that had found no abandonment. While language in *United* suggests that "specific findings" are an absolute requirement under § 7(b), see *id.* at 536, 99 S.Ct. at 2466, that proposition is unnecessary to the Court's conclusion and its survival past *Heckler v. Campbell* seems doubtful. Accordingly, we find the Commission free to rely on its *United* decision and Order No. 490.

■ This reduces petitioners to reliance on their claims before the Commission that abandonment would have anticompetitive effects. But vague and conclusory allegations, unsupported by proof, are not enough to entitle a party to a hearing. *General Motors Corp. v. FERC,* 656 F.2d 791, 798 n. 20 (D.C.Cir.1981). Here it is striking that none of MRT's customers (the purported victims of the anticompetitive effects) has opposed the abandonment. Moreover, petitioners' allegations make little sense. MRT's open-access blanket certificate assures that its customers have at least as many choices after the abandonment as before, as they will be able to reach upstream to buy from MRT's suppliers, including Trunkline. See *Order,* 46 FERC at 62,052. So far as appears, Trunkline and Panhandle object precisely because they stand to lose from competition. Thus we find no problem in the Commission's decision to permit abandonment, conditioned on MRT's acceptance of a blanket certificate.

## II.

■ We have held that the Commission may give retroactive effect to a § 7(b)

abandonment approval by the exercise of its general equitable powers under § 16 of NGA, 15 U.S.C. § 717*o.* *Northern Natural Gas Co. v. FERC,* 785 F.2d 338, 340–42 (D.C.Cir.1986). Petitioners contend that in doing so for the period from May 1, 1985 to the date of the Commission's order (March 23, 1989), FERC failed to use reasoned decisionmaking in its balance of the equities. A closely related issue, not technically involving retroactive effects, is the Commission's rationality in allowing the abandonment to be effective after the order but before MRT accepted its blanket certificate, which evidently occurred toward the end of 1989. See Brief for Petitioners at 23. As the blanket certificate was the Commission's sole justification for allowing the abandonment, it is not readily apparent why the change should take effect before the justifying event, much less back to termination of the contracts.

The Commission explained its grant of retroactive abandonment by saying that "MRT had taken timely and appropriate steps to avoid these charges." *Order,* 46 FERC at 62,053. This was more or less a reiteration of its reasoning in an earlier order in this case, where it approved retroactive abandonment because "MRT's application was filed well prior to the termination of its contract, and … its resolution was delayed through no fault of MRT." *MRT,* 39 FERC at 61,430. We agree that MRT's lack of fault is an equitable consideration favoring retroactive abandonment. See *Northern Natural,* 785 F.2d at 343. Had the Commission originally processed MRT's timely application for abandonment instead of dismissing it, MRT might have obtained its abandonment as of May 1, 1985. Where the Commission has committed legal error, we have said that "the proper remedy" is to put the parties in the position they would otherwise have occupied. *Office of Consumers' Counsel, State of Ohio v. FERC,* 826 F.2d 1136, 1139 (D.C.Cir.1987). See also *United Gas*

*Improvement Co. v. Callery Properties Inc.,* 382 U.S. 223, 229, 86 S.Ct. 360, 364, 15 L.Ed.2d 284 (1965); *Mid Louisiana Gas Co. v. FERC,* 780 F.2d 1238, 1247 (5th Cir.1986). And among the Commission's equitable powers under § 16 is to "regard as being done that which should have been done." *Northern Natural,* 785 F.2d at 341.

If this were all there was to it there would be no problem. But the Commission's order completely neglects both Trunkline's side of the balance and the Commission's own logic in approving abandonment. In explaining abandonment, the Commission said that it would be "consistent with the public convenience and necessity *only* if MRT accepted a blanket certificate." *Order,* 46 FERC at 62,052 (emphasis added). That condition would "ensure that the abandonment would not create obstacles to marketing of Trunkline's surplus gas supply, thereby further exasperating Trunkline's take-or-pay problems." *Id.;* see also *id.* at 62,053 (delay in acceptance of blanket certificate by MRT would tend to "lock-in Trunkline's gas"); *United Gas Pipe Line,* 43 FERC at 61,693. For the entire period up to MRT's acceptance of its blanket certificate Trunkline lacked access to MRT's markets (and MRT's customers lacked access to Trunkline). For that period Trunkline did not get the quid for its quo. Thus retroactivity does not put the parties in the position they would have occupied absent the legal error.[1]

The Commission never addressed these equities on Trunkline's side and must do so on remand. On appeal, it appeared to find Trunkline subject to a counterbalancing inequity. Its argument assumes that Trunkline had a contractual duty to file for abandonment. See Brief for Respondent at 21, 22. The theory is that Trunkline's failure to file necessitated MRT's doing so, which in turn gave rise to the Commission's legal error; thus Trunkline is not merely responsible for the delay, but culpably so.

---

1. In addition, at least for the period before the Commission's order of May 5, 1987, see *MRT,* 39 FERC at 61,430, Trunkline was still subject to its obligation to sell to MRT and may have been incurring take-or-pay expenses as a result of its

need to satisfy that obligation. This may be of little moment, however; from an early time Trunkline knew it could escape those duties by just saying Yes.

The flaw is obviously that Trunkline was not under any contractual duty to file for abandonment. See Trunkline Gas Company Contract, Joint Appendix at 51–54. In refusing to file, and in opposing MRT's application, it was merely asserting the legal rights sustained by this court in *Panhandle I.* No legal disfavor should follow.

We note that in *Valero Interstate Transmission Co. v. FERC,* 903 F.2d 364, 369–72 (5th Cir.1990), the court approved FERC's giving retroactive effect to an abandonment where the delay arose out of FERC's legal error and the buyer was without fault, even though abandonment had been conditioned on the purchasers' future agreement to provide transportation service to former sellers, see *MRT,* 39 FERC at 61,430 (ruling on Valero–Transco transaction). It appears that the parties all assumed the validity of the retroactivity provision of FERC's order as to MRT and Trunkline, and petitioner simply claimed that distinctions between the two cases required a different outcome.

On remand the Commission is free to consider whether the equities on both sides of the case call for an exercise of its § 16 powers. If it grants retroactive abandonment, it will have to explain why it can do so for the 1985–89 period even though the conditions found necessary in Order No. 490, and in *United Gas Pipe Line,* did not apply in that period and cannot be made to apply retroactively.

\*     \*     \*

The petitions for review are denied as to prospective abandonment and granted as to retroactive abandonment. The case is remanded for proceedings consistent with this opinion.

*So ordered.*